**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: THORPE
INSULATION CO.,
                                    *Debtor,*

─────────────

CONTINENTAL INSURANCE COMPANY,
as successor in interest to certain
policies issued by Harbor
Insurance Company,
                                    *Appellant,*

v.

THORPE INSULATION COMPANY,
                                    *Appellee,*

and

OFFICIAL CREDITORS' COMMITTEE OF
THORPE INSULATION COMPANY AND
PACIFIC INSULATION COMPANY,
                                    *Movant,*

FUTURE CLAIMS REPRESENTATIVE,
                *Real-party-in-interest.*

No. 10-55744

D.C. No.
2:08-cv-07862-DSF

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
August 30, 2011—Pasadena, California

Filed January 30, 2012

839

Before: Mary M. Schroeder and Ronald M. Gould,
Circuit Judges, and Richard Seeborg, District Judge.*

Opinion by Judge Gould

---

*The Honorable Richard Seeborg, United States District Judge for the Northern District of California, sitting by designation.

## COUNSEL

Robert Binion, Rodney Eshelman, and Alan Palmer Jacobus, Carroll, Burdick & McDonough, LLP, San Francisco, Califor-

nia; David C. Christian II and Jason J. DeJonker, Seyfarth Shaw, LLP, Chicago, Illinois; Todd C. Jacobs, Matthew A. Bills, and John E. Bucheit, Grippo & Elden LLC, Chicago, Illinois; and James M. Harris, Seyfarth Shaw, LLP, Los Angeles, California, for the appellant.

Daniel J. Bussel, David M. Guess, Kenneth N. Klee, and Thomas E. Patterson, Klee, Tuchin, Bogdanoff & Stern LLP, Los Angeles, California; Margie I. Dupuis, Richard W. Esterkin, Asa S. Hami, Michel Y. Horton, Charles J. Malaret, and Paul A. Richler, Morgan, Lewis & Bockius LLP, Los Angeles, California; Scotta E. McFarland and Jeremy V. Richards, Pachulski, Stang, Ziehl, Young, & Jones LLP, Los Angeles, California; Thomas M. Peterson and Jeffrey S. Raskin, Morgan, Lewis & Bockius LLP, San Francisco, California, for the debtor-appellee.

Peter J. Benvenutti and Michaeline H. Correa, Jones Day, San Francisco, California; Peter Lockwood and Ronald E. Reinsel, Caplin & Drysdale, Washington, D.C., for the movant.

Gary Fergus, Fergus, A Law Office, San Francisco, California, for the real-party-in-interest.

---

## OPINION

GOULD, Circuit Judge:

This appeal involves Continental Insurance Company's ("Continental") pursuit of a breach of contract claim against Thorpe Insulation Company ("Thorpe") in Thorpe's Chapter 11 bankruptcy proceeding. The district court affirmed the bankruptcy court's orders denying Continental's motion to compel arbitration and disallowing its claim. We now affirm.

# I

## A

Thorpe distributed and installed asbestos-containing products from 1948 to 1972. About 12,000 claims for asbestos-related injuries or deaths have been brought against Thorpe. Thorpe's insurers, including Continental, have paid more than $180 million defending and indemnifying Thorpe for these claims. In 1985, Continental and Thorpe entered into the Wellington Agreement, an omnibus insurance coverage and claims handling agreement between asbestos producers and their insurers. The Wellington Agreement provides for binding arbitration of coverage disputes.

In 1998, Continental told Thorpe that Thorpe had exhausted its coverage under Continental's insurance policies and ceased indemnifying Thorpe. Thorpe then sought, for the first time, "non-products" coverage under Continental's policies, asserting that such "non-products" coverage was not subject to the policies' liability limits. Continental disputed Thorpe's coverage claim and initiated arbitration under the Wellington Agreement. The arbitrator rejected Thorpe's claim and found that Thorpe had no remaining coverage rights under Continental's policies. Thorpe appealed, and the parties agreed to settle.

The parties executed an integrated Settlement Agreement and Release ("Settlement Agreement") in April of 2003. Whether there has been a breach of this agreement and whether that should be determined by an arbitrator or by the bankruptcy court are the issues presented by this litigation.

The Settlement Agreement provides for mutual releases, and states in relevant part:

> [Thorpe] fully releases and forever discharges [Continental] . . . of and from any and all claims, actions,

> causes of action, rights, liabilities, obligations and demands of every kind and nature, known and unknown, suspected or unsuspected, past, present, and future, arising out of, related to, or in any way connected with, in whole or in part, any claim of any kind under the Policies or relating to the [arbitration] . . . .

The Settlement Agreement also contains two warranties that are central to this case. First, the "Assignment Warranty" provides:

> The parties to this Agreement each represent and warrant that they have not and will not in any manner assign, transfer, convey or sell, or purport to assign, transfer, convey or sell to any entity or person any cause of action, chose in action, or part thereof, arising out of or connected with the matters released herein, and that they are the only persons or entities entitled to recover for damages under such claims, causes of action, actions, and rights.

Second, the "Establishment Warranty" provides:

> The parties to this Agreement each further represent and warrant that they will not in any way voluntarily assist any other person or entity in the establishment of any claim, cause of action, action, or right against the other party to this Agreement arising out of, resulting from or in any way relating to the matters released.

Thorpe and Continental agreed to arbitrate disputes regarding the Settlement Agreement and its terms.

The Settlement Agreement released only Thorpe's claims against Continental. It does not refer to the direct action rights

of individual asbestos claimants[1] or to the contribution, indemnity, or subrogation rights of other insurers. As such, direct action claims and other insurers' claims against Continental were not released under the terms of the Settlement Agreement.

After the 2003 Settlement Agreement, as Thorpe's coverage under other insurers' policies neared its limits, coverage actions commenced in California state court. Thorpe and the insurers began settlement discussions that contemplated Thorpe's filing for bankruptcy. Thorpe's goal was to confirm a plan of reorganization pursuant to section 524(g) of the Bankruptcy Code.

Section 524(g) is unique to the asbestos context. It provides a mechanism for consolidating asbestos-related assets and liabilities of a debtor into a single trust for the benefit of present and future asbestos claimants. *See* H.R. Rep. 103-835, at 46-48 (1994). Section 524(g) authorizes the bankruptcy court to enter a "channeling injunction"—channeling claims to the trust—to prevent claimants from suing the debtor. 4 Collier on Bankruptcy ¶ 524.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011). The injunction may also bar actions against third parties, such as insurers, that are based on asbestos-related claims against the debtor, if the third parties contribute to the trust in amounts that are commensurate with their likely liability. *Id.* One requirement for a § 524(g) injunction is that, "as part of the process of seeking approval of the plan of reorganization," a class of claimants be established and vote, by at least 75 percent of those voting, to approve the plan. 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb).

In preparation for the bankruptcy and to achieve settlement in the state court actions, Thorpe negotiated with insurers

---

[1]California law permits a tort claimant to bring a direct action against an insurer to recover on a judgment against the insured. *See* Cal. Ins. Code § 11580(b)(2).

other than Continental. Certain insurers agreed to fund the § 524(g) trust in consideration of Thorpe's filing for bankruptcy and seeking a § 524(g) injunction that would protect the insurers against asbestos-related claims arising out of policies issued to Thorpe. These insurers (the "Settling Insurers") agreed to assign their contribution, indemnity, and subrogation rights against Thorpe's other insurers, including Continental, to Thorpe and the trust to be established under § 524(g). Before filing for bankruptcy, Thorpe also collaborated with asbestos claimants to begin structuring a § 524(g) plan, as § 524(g) requires 75 percent of such claimants to consent to the plan as one requirement for it to be confirmed.

Continental contends that the above actions violated the Assignment Warranty and the Establishment Warranty of the 2003 Settlement Agreement. Continental also alleges that Thorpe encouraged and assisted the filing of three direct action lawsuits against Continental in September of 2007, in violation of the Establishment Warranty. Continental tried to arbitrate its claim that Thorpe's actions breached the Settlement Agreement. In a letter requesting arbitration, Continental made clear its concern over "a bankruptcy filing and/or any actions related thereto."[2] The arbitrator scheduled a hearing for October 16, 2007.

---

[2]The letter asked that arbitration proceed "as expeditiously as possible," because "a bankruptcy filing and/or any actions related thereto pertinent to the . . . policies may irreparably harm Continental['s] rights under the Settlement Agreement." Continental stated that it had reason to believe "that Thorpe is now preparing for bankruptcy and that, in doing so, Thorpe may be endeavoring to acquire, assert, or assign alleged rights against Continental . . . that were released in the Settlement Agreement, for example contribution rights acquired from other carriers in settlements," and "that Thorpe may be negotiating a bankruptcy with its adversaries, the asbestos claimants and their lawyers, and to the exclusion of its insurers." The letter also complained that "Thorpe [had] not been forthright about its bankruptcy plans."

**B**

On October 15, 2007, Thorpe filed for Chapter 11 bankruptcy. This stayed arbitration pursuant to 11 U.S.C. § 362. Continental filed a proof of claim in the bankruptcy court on February 11, 2008. Thorpe objected to the claim. Continental filed an amended proof of claim and moved to compel arbitration. The amended claim alleged the following to be violations of the Settlement Agreement: (1) Thorpe's prepetition acquisition of the Settling Insurers' contribution, indemnity, and subrogation rights against Continental;[3] (2) Thorpe's post-petition assignment of such rights to the trust created pursuant to the § 524(g) plan; (3) Thorpe's prepetition encouragement of direct action claims against Continental; and (4) "Thorpe's cooperation and participation as a 'Plan Proponent' in drafting, proposing, and seeking confirmation of a Plan designed to assist asbestos claimants in bringing direct action claims against . . . Continental."

The bankruptcy court set a hearing on the motion to compel arbitration and the claim objection for October 16, 2008; it told the parties that it would decide the motion to compel arbitration first and that it would then resolve legal but not factual issues relating to the claim objection. Continental did not conduct any discovery before the October 16 hearing.[4]

----

[3]Continental alleges that Thorpe's post-petition acquisition of one Settling Insurer's rights also violates the Settlement Agreement.

[4]Continental wanted to wait to conduct discovery until after a decision on its motion to compel arbitration. Understanding this, the bankruptcy court said to Continental:

> I'm not going to prohibit you from doing discovery, I'm not going to require you to do discovery. . . . If there are factual issues [after the legal issues are resolved], . . . I can't resolve those without an evidentiary hearing [that] I'm not going to do at that point. So that means if you wanted to wait to do your discovery until after your hearing on your motion to arbitrate, you can because you'll have some more time after that.

At the October 16 hearing, the bankruptcy court denied Continental's motion to compel arbitration and disallowed its claim. The bankruptcy court held that the allowance or disallowance of Continental's claim was a core matter under 28 U.S.C. § 157(b)(2).[5] But the core nature of the proceeding "[didn't] answer the [arbitration] question." The bankruptcy court recognized the "strong federal policy in favor of . . . arbitration," but stated that in core matters, it had "discretion in an appropriate case not to send it to arbitration." Quoting from a prior tentative ruling, the bankruptcy court explained why in its view this case was such an appropriate case, and exercised its discretion to deny Continental's motion to compel arbitration:

> Although the conduct of which [Continental] complain[s] may have commenced prepetition, the acts of which [Continental] complain[s], if true, are inextricably intertwined with the manner in which [Thorpe is] attempting to structure, orchestrate, and obtain approvals for what is likely to be a complex plan of reorganization. Resolution of these claims would require the trier of fact to adjudicate whether in conducting and administering these Chapter 11 cases and negotiating with the various constituencies involved in the case concerning the prospect of a consensual plan of reorganization, [Thorpe] has somehow run afoul of contractual provisions contained in a prepetition settlement agreement with [Continental]. Such matters are within the exclusive jurisdiction of the Bankruptcy Court. As a matter of fundamental bankruptcy policy, only a Bankruptcy Court should decide whether the manner in which someone has administered a bankruptcy estate gives rise to a claim for damages. Non-bankruptcy courts

---

[5]Section 157(b)(2) provides a nonexhaustive list of core proceedings that includes "allowance or disallowance of claims against the estate." *See* 28 U.S.C. § 157(b)(2)(B).

cannot be the arbiters of such issues. . . . Moreover, the arguments that [Continental] wish[es] to advance are inextricably intertwined with the issues that the Court will have to address in connection with confirmation of the proposed plan . . . .

. . . .

. . . The very terms of the plan themselves are among the alleged breaches of the settlement agreement.[6]

After denying Continental's motion to compel arbitration, the bankruptcy court turned to Continental's claim and Thorpe's claim objection. It sustained Thorpe's claim objection and disallowed Continental's claim as a matter of law.

First, as to Thorpe's alleged breaches of the Assignment Warranty, the bankruptcy court held that the plain language of the Settlement Agreement precludes Thorpe from assigning claims to third parties, but does not preclude acquiring claims from third parties, so Thorpe's mere acquisition of the Settling Insurers' contribution, indemnity, and subrogation rights against Continental did not breach the Assignment Warranty.[7]

The bankruptcy court also rejected as a matter of law Continental's argument that Thorpe's assignment of the Settling Insurers' rights to the § 524(g) trust breached the Assignment Warranty. The bankruptcy court reasoned that because Thorpe could not have released third parties' claims in the Settlement Agreement, the Settling Insurers' contribution, indemnity, and subrogation claims did not "vaporiz[e]" once assigned to

---

[6]*Cf.* 28 U.S.C. § 157(b)(2)(A), (L) ("Core proceedings include . . . matters concerning the administration of the estate; . . . confirmation of plans.").

[7]The bankruptcy court found explicitly that "no amount of extrinsic evidence" could "change a prohibition on transferring out to a prohibition on receiving."

Thorpe. And because those claims, as assets, "ought to go in the trust," the bankruptcy court held that even if the Assignment Warranty by its terms precluded Thorpe from then assigning them to the trust, the provision would not be enforceable under Bankruptcy Code sections 524(g), 541(c)(1), and 1123(a)(5)(B).

The bankruptcy court next addressed Thorpe's alleged breaches of the Establishment Warranty. It concluded that, even assuming Continental's broad reading of the warranty, a breach of contract claim based on Thorpe's actions to assist asbestos claimants in bringing claims against Continental—as part of its efforts to confirm a reorganization plan and create a § 524(g) trust—could not succeed as a matter of bankruptcy law. The bankruptcy court reasoned along these lines: Given that "agreements in which a Debtor contracts away prepetition rights that it would otherwise have had in the context of a bankruptcy case are not generally enforceable," the conduct alleged to be a breach in this case, "the formulation and structuring, negotiation, [and] attempt to arrive at the very kind of plan structure that [§ ] 524(g) is about," could not be "a breach of an enforceable contract." Continental appealed to the district court.

The district court affirmed the bankruptcy court's order denying Continental's motion to compel arbitration and affirmed the order disallowing Continental's claim in large part. But the district court reversed the bankruptcy court's disallowance order as to Continental's allegations concerning Thorpe's prepetition encouragement of direct actions against Continental.

The district court agreed that resolution of Continental's claim was a core proceeding. It also agreed that the bankruptcy court had discretion to deny Continental's motion to compel arbitration, "at least to the extent that arbitration of the claim would conflict with the purposes of the Bankruptcy Code," and held that the bankruptcy court's findings "support

the conclusion that arbitration of the claims would conflict with the underlying purposes of the Bankruptcy Code." The district court upheld the bankruptcy court's findings and conclusions regarding the Assignment Warranty, as well as its finding that Thorpe's bankruptcy-related actions alleged to breach the Establishment Warranty were "part-and-parcel of its attempt to establish a trust . . . and to avail itself . . . of the protections of 11 U.S.C. § 524(g)." However, the district court held that the bankruptcy court's findings did not support disallowance of Continental's claim to the extent that it alleged Thorpe's prepetition encouragement of direct action claims against Continental, and remanded this issue to the bankruptcy court. The district court stated that its opinion regarding the core nature of Continental's claims against the bankruptcy estate "applie[d] with equal force to [the remanded] claims" and "expresse[d] no opinion on whether the bankruptcy court should refer these claims to arbitration."

On remand, Thorpe moved for summary judgment on the remanded portions of its objection to Continental's claim, and Continental moved to compel arbitration of the remanded "encouragement claims." Continental requested discovery, but the bankruptcy court neither gave Continental an opportunity to conduct discovery nor held an evidentiary hearing before ruling on the motions.

At a May 28, 2009 hearing, Continental refused to argue the remanded issue—Thorpe's alleged prepetition encouragement of three direct actions—as a "standalone claim" unrelated to Thorpe's larger goal of filing for bankruptcy and confirming a § 524(g) plan. In light of Continental's unwillingness to separate the direct actions from Thorpe's efforts to negotiate a plan and prepare for bankruptcy, the bankruptcy court concluded that its previous analysis of Thorpe's postpetition conduct, that "contracts for prepetition waivers of bankruptcy-related rights [are] unenforceable," applied with equal force to Thorpe's prepetition conduct. The bankruptcy court granted Thorpe's post-remand motion for summary

judgment, sustained Thorpe's claim objection, and disallowed Continental's claim in its entirety.

The bankruptcy court also denied Continental's renewed motion to compel arbitration. It concluded that it had discretion not to enforce the arbitration clause in the Settlement Agreement for two reasons. First, the case required centralization, because resolution of Continental's claim had to be coordinated with the plan confirmation process and because Continental's claim and its objection to the plan confirmation overlapped factually.[8] Second, the remaining claims, as asserted by Continental on remand, still involved Thorpe's exercise of its rights in bankruptcy and should be decided by a bankruptcy judge.

The bankruptcy court indicated that if Continental's claim "really could be separated out and be a standalone claim," then arbitration might be appropriate. But, from Continental's comments at the hearing and its moving papers, the bankruptcy court found that "[t]his one little piece cannot be extracted and treated as something different from" Thorpe's actions in the bankruptcy. The bankruptcy court stated that Continental's post-remand claim was "inextricably intertwined with something I really need to adjudicate," and so, it reasoned, "I can't let this go to arbitration because it's too fraught with peril that . . . a nonbankruptcy forum would end up adjudicating things that [it] really ha[s] no business adjudicating, lest [it] run into a violation of bankruptcy policy." Continental again appealed to the district court.

The district court affirmed the bankruptcy court's orders denying Continental's motion to compel arbitration and disallowing its claim, concluding that "Continental repeatedly refused to limit the scope of its claim to matters that were within the scope of the remand and would not require the

---

[8]Continental's challenge to Thorpe's § 524(g) plan is the subject of a related appeal in this court, Nos. 10-56543 & 10-56622.

arbitrator to decide important matters of bankruptcy policy involving § 524(g)." Continental then appealed to this court.

## II

We have jurisdiction under 28 U.S.C. § 158(d) and 9 U.S.C. § 16(a)(1)(B). *See Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222, 227 (3d Cir. 2006). "We review de novo a district court's decision on appeal from a bankruptcy court." *Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1109 (9th Cir. 2010). We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Id.* Whether a bankruptcy court has discretion to deny a motion to compel arbitration is a question of law that we review de novo. *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 494 (5th Cir. 2002). If we conclude that the bankruptcy court had discretion, we review its exercise of discretion only for abuse of discretion. *Id.* We review the denial of discovery requests for abuse of discretion. *See Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 810 (9th Cir. 2008). We review de novo a bankruptcy court's disallowance of a claim as a matter of law. *See id.*

## III

Continental contends that its claim should be arbitrated pursuant to the arbitration clause in the Settlement Agreement. It argues first, that its claim is non-core, and second, that even if its claim is core, it should be arbitrated because arbitration would not inherently conflict with the Bankruptcy Code. We disagree.

## A

**[1]** The Federal Arbitration Act, 9 U.S.C. § 1 et seq., establishes "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The Act provides that agree-

ments to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," and that a court must stay a proceeding if it is satisfied that an issue in the proceeding is arbitrable under such an agreement. 9 U.S.C. §§ 2-3. A court's duty to "rigorously enforce" arbitration agreements does not diminish "when a party bound by an agreement raises a claim founded on statutory rights." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal quotation marks omitted).

**[2]** "Like any statutory directive," however, "the Arbitration Act's mandate may be overridden by a contrary congressional command." *Id.* at 227. "If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* (alteration, citation, and internal quotation marks omitted).

**[3]** We must decide whether Congress "intended to make an exception to the Arbitration Act" for claims arising in bankruptcy proceedings, "an intention discernible from the text, history, or purposes of the [Bankruptcy Code]." *See id.* Neither the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude arbitration in the bankruptcy setting. *See Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.)*, 479 F.3d 791, 796 (11th Cir. 2007); *In re Mintze*, 434 F.3d at 231; *Mor-Ben Ins. Mkts. Corp. v. Trident Gen. Ins. Co. (In re Mor-Ben Ins. Mkts. Corp.)*, 73 B.R. 644, 648 (B.A.P. 9th Cir. 1987). We ask, then, whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code. *See McMahon*, 482 U.S. at 227.

**[4]** This issue is one of first impression in our circuit. Several of our sister circuits that have addressed the issue have considered, as a threshold matter, a distinction between core

and non-core proceedings. *See In re Elec. Mach. Enters.*, 479 F.3d at 796; *U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n (In re U.S. Lines)*, 197 F.3d 631, 640 (2d Cir. 1999); *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1066-69 (5th Cir. 1997). In non-core proceedings, the bankruptcy court generally does not have discretion to deny enforcement of a valid prepetition arbitration agreement. *In re Elec. Mach. Enters.*, 479 F.3d at 796; *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 166 (2d Cir. 2000); 2 Martin Domke, Domke on Commercial Arbitration § 52:6 (3d ed. 2011); *see also MCI Telecomms. Corp. v. Gurga (In re Gurga)*, 176 B.R. 196, 199-200 (B.A.P. 9th Cir. 1994). In core proceedings, by contrast, the bankruptcy court, at least when it sees a conflict with bankruptcy law, has discretion to deny enforcement of an arbitration agreement. *Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co.)*, 403 F.3d 164, 169 (4th Cir. 2005); *In re U.S. Lines*, 197 F.3d at 640; *In re Nat'l Gypsum*, 118 F.3d at 1067-68; Domke, *supra*, § 52:7. The rationale for the core/non-core distinction, as explained by the Second Circuit, is that non-core proceedings "are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration," whereas core proceedings "implicate more pressing bankruptcy concerns." *In re U.S. Lines*, 197 F.3d at 640.

**[5]** However, "not all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code." *In re Nat'l Gypsum*, 118 F.3d at 1067. We agree that the core/non-core distinction, though relevant, is not alone dispositive. We join our sister circuits in holding that, even in a core proceeding, the *McMahon* standard must be met—that is, a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of

the Bankruptcy Code. *See McMahon*, 482 U.S. at 227; *In re Elec. Mach. Enters.*, 479 F.3d at 796 (Eleventh Circuit); *In re Mintze*, 434 F.3d at 231 (Third Circuit); *In re White Mountain Mining*, 403 F.3d at 169-70 (Fourth Circuit); *In re U.S. Lines*, 197 F.3d at 640 (Second Circuit); *In re Nat'l Gypsum*, 118 F.3d at 1069-70 (Fifth Circuit).

**B**

**[6]** Here, we agree with the bankruptcy court and the district court that the resolution of Continental's claim was a core proceeding. Continental argues that its "state law breach of contract claim" is non-core because "it is based on state law and arose outside of and independent of Thorpe's bankruptcy." Yet regardless of how Continental characterizes its claim, Continental filed a proof of claim, and Thorpe objected to the claim, so under 28 U.S.C. § 157(b)(2)(B), the allowance or disallowance of that claim was a core proceeding. *See Durkin v. Benedor Corp. (In re G.I. Indus. Inc.)*, 204 F.3d 1276, 1279-80 (9th Cir. 2000) ("The filing of a proof of claim is the prototypical situation involving the 'allowance or disallowance of claims against the estate,' a core proceeding under 28 U.S.C. § 157(b)(2)."); 1 *Collier, supra*, ¶ 3.02[3][a] ("An objection to a claim is classified as a core proceeding even though, in another context, the litigation in question might be related."). One can readily see that allowing a claim for Continental would affect what was available for all creditors to receive. Continental's claim disputed or affected assets in the § 524(g) trust (the Settling Insurers' contribution, indemnity, and subrogation rights) and the rights of other creditors (the asbestos claimants). Accordingly, resolution of that claim directly impacted the administration of the bankruptcy estate. *See* 28 U.S.C. § 157(b)(2)(A). On all these grounds we hold that the resolution of Continental's claim was a core matter in the bankruptcy.

## C

We next address whether, in this core proceeding, the bankruptcy court had discretion to deny Continental's motion to compel arbitration.

**[7]** As an initial matter, we note that Continental's claim is not, as Continental contends on appeal, "independent of Thorpe's bankruptcy." From Continental's initial letter requesting arbitration and its arguments throughout this litigation, it is clear that "[Thorpe's] bankruptcy filing and/or any actions related thereto" are related to Continental's claim. The amended proof of claim challenges Thorpe's acquisition of the Settling Insurers' contribution, indemnity, and subrogation rights against Continental, its assignment of those rights to the § 524(g) trust, and its efforts to negotiate, structure, and confirm a plan designed to assist asbestos claimants in bringing direct actions—all actions that Thorpe took to exercise its rights in bankruptcy.

**[8]** Because Thorpe's alleged breaches of the Settlement Agreement were "inextricably intertwined" with its bankruptcy, the bankruptcy court determined that resolving Continental's claim required adjudication of "whether in conducting and administering these Chapter 11 cases and negotiating with the various constituencies involved in the case concerning the prospect of a consensual plan of reorganization, [Thorpe] has somehow run afoul of contractual provisions contained in a prepetition settlement agreement," and that "[a]s a matter of fundamental bankruptcy policy, only a Bankruptcy Court should decide whether the manner in which someone has administered a bankruptcy estate gives rise to a claim for damages." In other words, the nature of the allegations were such that adjudication of Continental's claim in any forum other than a bankruptcy court would conflict with "fundamental bankruptcy policy." As such, the bankruptcy court concluded that it had discretion not to send the claim to arbitration. The district court agreed, stating that Continen-

tal's claim raised questions "go[ing] to the heart of § 524(g) and the management of an asbestos-related bankruptcy estate," that "should be resolved by a bankruptcy judge and not an arbitrator."

[9] We agree. The purpose of § 524(g) is to consolidate a debtor's asbestos-related assets and liabilities into a single trust for the benefit of asbestos claimants. *See* H.R. Rep. 103-835, at 46-48. Congress intended that the trust/injunction mechanism be "available for use by any asbestos company facing . . . overwhelming liability." *See id.* at 48. Congress tasked bankruptcy courts with ensuring that § 524(g)'s "high standards" are met and gave them authority to implement and supervise this unique procedure. *See id.* at 47. A claim based on a debtor's efforts to seek for itself and third parties the protections of § 524(g) implicates and tests the efficacy of the provision's underlying policies. Because Congress intended that the bankruptcy court oversee all aspects of a § 524(g) reorganization, only the bankruptcy court should decide whether the debtor's conduct in the bankruptcy gives rise to a claim for breach of contract. Arbitration in this case would conflict with congressional intent.

Even apart from § 524(g), the purposes of the Bankruptcy Code include "[c]entralization of disputes concerning a debtor's legal obligations" and "protect[ing] creditors and reorganizing debtors from piecemeal litigation." *In re White Mountain Mining*, 403 F.3d at 170; *In re Nat'l Gypsum*, 118 F.3d at 1069.[9] Arbitration of a creditor's claim against a

---

[9]Continental argues that judicial economy and centralization of disputes are not sufficient bases for nonenforcement of an otherwise applicable arbitration clause. In general, this proposition is correct, *see Moses H. Cone*, 460 U.S. at 20, but it does not hold in the bankruptcy context. In rejecting essentially the same argument that Continental makes here, the Fifth Circuit stated, "[I]nsofar as efficiency concerns might present a genuine conflict between the Federal Arbitration Act and the [Bankruptcy] Code—for example where . . . severe delays would prejudice the rights of creditors or the ability of a debtor to reorganize—they may well represent legitimate considerations." *In re Nat'l Gypsum*, 118 F.3d at 1070 n.21.

debtor, even if conducted expeditiously, prevents the coordinated resolution of debtor-creditor rights and can delay the confirmation of a plan of reorganization. An example may help to illuminate the problem: Suppose that (1) several creditors seek to arbitrate their prepetition claims; (2) each is a party to an agreement containing an arbitration clause; and (3) under the arbitral rules governing the arbitrations, while efficiency is favored there is no absolute time limit on the arbitration, with the pace of proceedings resting on decisions of arbitrators. In such a case separate arbitrations would so fracture the plan confirmation process that one could never say for sure when it could be brought to conclusion for the benefit of the debtor and all creditors. To a certainty, in such a case the bankruptcy court would lose control over the timing of the reorganization because it would not have control over the timing of the arbitrations. The general need in any bankruptcy proceeding for centralization is heightened in a § 524(g) proceeding involving multiple insurers and numerous asbestos claimants. *See In re U.S. Lines*, 197 F.3d at 641 ("[T]he bankruptcy court is the preferable venue in which to handle mass tort actions involving claims against an insolvent debtor."). In the § 524(g) context, delay not only disrupts a debtor's efforts to reorganize, but also affects the rights of countless asbestos claimant creditors, for whose benefit in part § 524(g) was enacted. Pragmatic concerns such as these pose a serious conflict between arbitration, normally a benign and efficient form of dispute resolution, and the underlying purposes of the Bankruptcy Code, which are tailored to the needs of debtors and creditors. *See In re Nat'l Gypsum*, 118 F.3d at 1069-70 & n.21.

**[10]** Continental's claim, including the remanded portion of it, is based on Continental's challenge to Thorpe's efforts to seek § 524(g) relief and confirm a § 524(g) plan. There was no error in the bankruptcy court concluding that such a claim must be resolved by a bankruptcy court, not an arbitrator.[10]

---

[10] The Supreme Court has admonished that "courts must examine a complaint with care to assess whether any individual claim must be arbitrat-

Moreover, centralizing the dispute in this case had heightened importance because the bankruptcy court found a need to expedite resolution of Continental's claim—to allow payments to Thorpe's creditors "as soon as possible"—and to coordinate resolution of the claim with the plan confirmation process. In accord with the courts below, we conclude that arbitration of the claim presented by Continental would conflict with the purposes and policies of § 524(g) and the Bankruptcy Code as a whole.[11] Accordingly, the bankruptcy court had discretion not to enforce the arbitration clause. And, for the reasons set forth above, we hold that the bankruptcy court did not abuse its discretion in denying Continental's motion to compel arbitration.

## IV

Continental challenges the disallowance of its claim on procedural and substantive grounds. It contends that the bank-

---

ed." *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 26 (2011) (per curiam). If Continental on remand had presented a standalone claim relating solely to Thorpe's prepetition encouragement of direct actions, that claim likely should have been arbitrated, and we read the bankruptcy court decision to indicate that if the claim was limited and isolated to prepetition matters independent of the bankruptcy, then the bankruptcy court might have sent such a narrow claim to arbitration. But because Continental steadfastly declined to limit its post-remand claim, we agree with the bankruptcy court that sending the claim to arbitration risked the arbitrator "tread[ing] upon matters that were properly decided by the Bankruptcy Court" and potentially "run[ning] into a violation of bankruptcy policy."

[11] Citing *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1168 (9th Cir. 1990), Continental argues that any potential conflict between arbitration and the Bankruptcy Code could be avoided by first allowing the arbitrator to decide the merits of its claim, and then having the bankruptcy court decide how the claim, once established, should be administered in the bankruptcy. But Continental's claim, unlike the claim in Tuscon Estates, overlaps with the substantive provisions of the Bankruptcy Code, and would significantly interfere with the § 524(g) process. Continental's proposed solution would not avoid the conflict we identify.

ruptcy court should not have summarily disallowed its claim without permitting it to conduct discovery. It argues further that the bankruptcy court's interpretation of the Settlement Agreement and its conclusion on prepetition waiver were erroneous. We address these arguments in turn.

## A

A bankruptcy court abuses its discretion in denying discovery only if "the movant diligently pursued its previous discovery opportunities, and can demonstrate that allowing additional discovery would have precluded summary judgment." *See In re Slatkin*, 525 F.3d at 810 (quoting *Bank of Am., NT & SA v. PENGWIN*, 175 F.3d 1109, 1118 (9th Cir. 1999)).

Continental complains that "discovery by it was completely and without exception foreclosed." Our review of the record leads us to a contrary conclusion. Before the October 16, 2008 hearing, Continental did not conduct any discovery, but not because the bankruptcy court forbade it from doing so. Though the bankruptcy court told Continental that it could "wait" to do its discovery until after the hearing on its motion to compel arbitration, the bankruptcy court said, in the same breath, that it would not "prohibit" Continental from doing discovery. Continental made its own strategic choice to forego discovery because it hoped to conduct its discovery in the arbitration.[12] Then, two days before the October 16 hearing, Continental filed an emergency motion seeking to conduct discovery and requesting that the bankruptcy court

---

[12]The following statement, from a declaration filed on October 2, 2008 in support of Continental's opposition to Thorpe's claim objection, is pertinent: "[Continental] believe[s] that any discovery related to the proofs of claim and the objections should be conducted in the arbitration, not in this Court. Accordingly, [Continental] ha[s] not yet served any discovery. . . ." The declaration then outlined the discovery that Continental thought relevant to the merits of its claim, but Continental did not thereafter serve discovery requests on Thorpe or third parties.

continue its decision on the merits of Thorpe's claim objection. The bankruptcy court denied the motion, stating, "At no time did this Court preclude Continental from engaging in discovery with respect to Thorpe's objection to the Claim. . . . Continental's tactical decision to defer discovery does not constitute good cause for continuing the hearing."[13]

Also, the bankruptcy court sustained Thorpe's claim objection and disallowed Continental's claim as a matter of law. It explicitly reasoned that "any evidence that Continental may have obtained in discovery would not change the outcome of the objection to the Claim." Though stated after the initial, October 16, 2008 hearing, this reasoning also applies to the claim and claim objection on remand, because Continental refused to present a standalone claim on Thorpe's prepetition encouragement of direct actions.[14] If the bankruptcy court was

---

[13]Continental conceded this point at the post-remand hearing on its claim:

> THE COURT: . . . It's not true that discovery was not allowed in connection with this. If you go back [before the October 16, 2008 hearing], I said you don't need to do it now because if I'm going to decide . . . on a factual issue, I'll give you a further opportunity.
>
> But it isn't that it wasn't allowed. In fact, there was a point in time where . . . it was intentionally not going to be done by [Continental] here in this forum because you wanted very much to go back to arbitration. So it isn't that I precluded you from doing discovery, but I understand that I said I'd give you more time later [if there were issues of fact to be resolved].
>
> MR. JACOBS [Counsel for Continental]: I actually agree with the Court. I stand corrected.

[14]After the case was remanded, the bankruptcy court did not permit Continental to conduct discovery, despite Continental's Rule 56(f) request. *See* Fed. R. Civ. P. 56(f); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("[T]he Supreme Court has restated [Rule 56(f)] as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.' " (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

correct, that there were no issues of fact and that the claim was properly disallowed as a matter of law, then Continental would be hard pressed to "demonstrate that allowing additional discovery would have precluded summary judgment." *See In re Slatkin*, 525 F.3d at 810.

**[11]** Given Continental's decision not to conduct discovery before the October 16, 2008 hearing, its decision that it would not argue the remanded issue as a standalone claim, and the bankruptcy court's resolution of Continental's claim as a matter of law, we conclude that the bankruptcy court did not abuse its discretion by declining to give Continental further opportunity for discovery.

**B**

Continental next challenges the bankruptcy court's merits determination that Thorpe's actions in pursuing a § 524(g) reorganization did not create a claim for damages. Continental contends that Thorpe breached the Assignment Warranty by acquiring the Settling Insurers' claims and assigning them to the § 524(g) trust, and that it breached the Establishment Warranty by collaborating with asbestos claimants to structure and confirm a § 524(g) plan. But even if the covenants in the Settlement Agreement by their terms would have proscribed these actions, we conclude that, to the extent that they did,

242, 250 n.5 (1986))). The bankruptcy court explained that it was not inclined to grant summary judgment on the basis of either Thorpe's legal arguments about the Settlement Agreement language or its factual argument that it had not encouraged the direct actions. The bankruptcy court said at first, "I would be inclined to continue this hearing and let there be discovery on the issue of what was actually said and was there actually any encouragement." Once it concluded that Continental's claim as presented was inseparable from Thorpe's exercise of its rights in bankruptcy, the bankruptcy court held that discovery was not necessary and granted summary judgment based on its reasoning before the prior appeal to the district court which yielded the partial remand.

they were not enforceable, because they then would be purported prepetition waivers of the protections of the Bankruptcy Code, which need not here be permitted.

We have held that "[i]t is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code." *Bank of China v. Huang (In re Huang)*, 275 F.3d 1173, 1177 (9th Cir. 2002). "This prohibition of prepetition waiver has to be the law; otherwise, astute creditors would routinely require their debtors to waive." *Id.* In *Huang*, a prepetition settlement agreement provided that the debtor would not file for bankruptcy and that a debt was not dischargeable in bankruptcy. Though the Settlement Agreement here does not specifically mention bankruptcy, other courts have said that prepetition waivers of bankruptcy benefits generally are unenforceable. *See, e.g.*, *Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 651-52 & n.7 (B.A.P. 9th Cir. 1998) (collecting cases); *In re Pease*, 195 B.R. 431, 434-35 (Bankr. D. Neb. 1996) ("[A]ny attempt by a creditor in a private pre-bankruptcy agreement to opt out of the collective consequences of a debtor's future bankruptcy filing is generally unenforceable. The Bankruptcy Code preempts the private right to contract around its essential provisions.").

Similarly, specific provisions of the Bankruptcy Code invalidate prepetition anti-assignment clauses that would limit a debtor's rights to assign its interests in bankruptcy. Section 541(c)(1)(A) states that, when a Chapter 11 case starts, an interest of the debtor becomes property of the estate, "notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law . . . that restricts or conditions transfer of such interest by the debtor." Section 541(c)(1) thus overrides a contractual provision that "purports to limit or restrict the rights of a debtor to transfer or assign[ ] its interests in bankruptcy." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 219 n.27 (3d Cir. 2004). Section 1123(a)(5)(B) states that "[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide adequate means for

the plan's implementation, such as . . . transfer of . . . property of the estate to one or more entities, whether organized before or after the confirmation of such plan." *Cf. In re Combustion Eng'g*, 391 F.3d at 219 n.27 ("The Bankruptcy Code expressly contemplates the inclusion of debtor insurance policies in the bankruptcy estate." (citing §§ 541(c)(1), 1123(a)(5))).

Thorpe sought to use § 524(g)'s trust/injunction mechanism. For its reorganization to succeed, asbestos-related assets and liabilities had to be consolidated in the § 524(g) trust. The inability to transfer valuable assets to the trust could have thwarted confirmation of the plan. Thorpe acquired the Settling Insurers' contribution, indemnity, and subrogation claims against Continental and assigned them to the trust pursuant to settlement agreements in which the Settling Insurers agreed to fund the trust. Thorpe did not acquire the claims to then assert them against Continental in its own right, nor did it assign the claims to an independent third party to gain benefit for itself. Thorpe transferred the Settling Insurers' claims to the trust to "provide adequate means for the plan's implementation," and the claims became assets of the trust for the benefit of asbestos claimants. *See* 11 U.S.C. §§ 524(g), 1123(a)(5)(B). The Bankruptcy Code gave Thorpe, as a Chapter 11 debtor, the right to acquire these assets and assign them to the § 524(g) trust, "notwithstanding any provision in a[ ] [prepetition] agreement." *See id.* § 541(c)(1)(A); *see also In re Huang*, 275 F.3d at 1175.[15]

[12] To confirm the § 524(g) plan, Thorpe also needed the affirmative vote of 75 percent of asbestos claimants voting on

---

[15]We reject Continental's argument that the bankruptcy court erred in concluding, without considering extrinsic evidence, that the Assignment Warranty was not reasonably susceptible to the interpretation it urged. Even if the Assignment Warranty precluded not only assignment of claims but also acquisition of claims, which we doubt is correct, it would restrict Thorpe's ability to implement a § 524(g) plan and would be void as against congressional policy in the Bankruptcy Code.

the plan. 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb). If Thorpe did not negotiate with asbestos claimants and their representatives to set a plan that they would support, a successful reorganization would not have been possible. If, in negotiating the terms of the plan, Thorpe had to accommodate the asbestos claimants' interests in preserving direct action rights and maximizing the trust's insurance assets—interests potentially adverse to those of Continental—it is not liable to Continental for doing so. Thorpe could not contract away its right to avail itself of the protections of § 524(g). *See In re Huang*, 275 F.3d at 1175. The courts below correctly disallowed Continental's claim.

**AFFIRMED.**