FILED

JUL 15 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.  CC-12-1386-DKiPa |
| ) | |
| ATECO, INC., ) | Bk. No.  10-22623-MT |
| ) | |
|    Debtor. ) | Adv. No. 11-01198-MT |
| _____) | |
| ) | |
| LAW OFFICES OF JOHN F.L. HEBB,) | |
| ) | |
|    Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| ATECO, INC., ) | |
| ) | |
|    Appellee. ) | |
| _____) | |

Argued and Submitted on June 20, 2013
at Pasadena, California

Filed - July 15, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen A. Tighe, Bankruptcy Judge, Presiding

———————————————

Appearances: John F.L. Hebb argued for Appellant Law Offices of
John F.L. Hebb; Steven J. Krause of Ananda & Krause,
APLC, argued for Appellee Ateco, Inc.

———————————————

Before: DUNN, KIRSCHER and PAPPAS, Bankruptcy Judges.

_____

  [1]  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

1

For the second time, Appellant Law Offices of John F.L. Hebb ("Hebb") has invoked the jurisdiction of this Panel in conjunction with his attorney fee dispute with Debtor/Appellee, Ateco, Inc. ("Ateco"). The briefs and the record submitted by the parties obscure the limited issues on appeal, i.e., whether the bankruptcy court erred when it determined that the Federal Arbitration Act[2] ("FAA") did not apply to the dispute between the parties, and whether Hebb waived any right he might have had under the California Arbitration Act. We AFFIRM.

## I. FACTS

The dispute between the parties stems from Ateco's dissatisfaction with the legal services Hebb rendered on its behalf beginning in 2002. In September 2002, Ateco entered into an Attorney-Client Retainer Agreement ("Retainer Agreement") with Hebb, pursuant to which Hebb was to represent Ateco "in investigating, negotiating, enforcing and/or advising regarding: **[Ateco's] rights, settlement possibilities and any causes of action arising out of [Ateco's] business dealings with R.A. Hales . . . .**" (Emphasis in the original.) The Retainer Agreement provided that Hebb's hourly rate was $225.00, which represented a "special discount from [Hebb's] customary $300-$325 hourly rate." The Retainer Agreement also purported to grant Hebb a lien on Ateco's claim or recovery against Hales:

[Hebb] is hereby given a lien on the said claim or cause

---

[2]    9 U.S.C. §§ 1-16.

2

of action, on any recovery by way of settlement, and on any judgment that may be obtained, for the sum and/or share hereinbefore mentioned due [Hebb], and it is further agreed that [Hebb] shall have all permissible general, possessory, or retaining liens, and all permissible special or charging liens known to common law.

On Ateco's behalf, Hebb initiated litigation against Hales ("Hales Litigation") in the Ventura County (California) Superior Court ("State Trial Court"). Hebb filed three complaints in the Hales Litigation. The first two were dismissed by demurrer. When the second amended complaint was facing a motion for judgment on the pleadings, Ateco retained new counsel ("the Hathaway Firm") to represent it in the Hales Litigation. Despite the Hathaway Firm's representation of Ateco in the Hales Litigation, it does not appear that Ateco terminated Hebb's services. Ateco contends that Hebb's work product was so defective his services were no longer used after the Hathaway Firm was retained; Hebb disagrees.

The Hales Litigation resulted in judgment in Ateco's favor in the amounts of $333,743 for compensatory damages and $159,000 for punitive damages. Hebb and the Hathaway Firm thereafter filed separate motions for attorney's fees in the Hales Litigation. Following a hearing, the State Trial Court granted all fees requested by the Hathaway Firm ($334,276.50), but took under submission Hebb's request for attorneys fees in the amount of $510,873, billed at the rate of $300 per hour. The State Trial Court ultimately determined that the reasonable value of Hebb's services was $200,000 and granted Hebb's attorney fee motion in that amount through a minute order entered February 26, 2006.

3

Hebb thereafter asserted an attorney's lien against any payment due Ateco in the Hales Litigation. Ateco disputed Hebb's right to assert a lien, contending it already had paid him $250,000 in attorney's fees. Sometime in 2008, Hebb initiated a state court proceeding ("Fee Litigation") against Ateco and its principal based upon the Retainer Agreement. Trial in the Fee Litigation was scheduled to commence September 20, 2010. On August 17, 2010, the parties stipulated ("Arbitration Stipulation")[3] to submit the Fee Litigation to binding arbitration, notwithstanding the absence of an arbitration provision in the Retainer Agreement, with the result that the imminent trial date in the Fee Litigation was vacated. The Arbitration Stipulation provided that the fee dispute was to be submitted to a private arbitrator using JAMS ADR or ADR Services, Inc., and that arbitration was to be completed no later than November 15, 2010.

Ateco filed a chapter 11[4] petition on October 5, 2010

_____

[3] As relevant to this appeal, the Arbitration Stipulation provides:

1. The within case shall be submitted to binding arbitration before a private arbitrator mutually selected by the parties using JAMS ADR or ADR Services, Inc. The parties agree to select an arbitrator and complete the arbitration on or before November 15, 2010. Costs of arbitration are to be borne equally by [Hebb] on the one hand and [Ateco and its principal] on the other hand. . . .

[4] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and

(continued...)

4

("Petition Date"), staying arbitration proceedings under the Arbitration Stipulation.[5]  Hebb filed a proof of claim ("Claim") in Ateco's bankruptcy case, asserting entitlement to $324,546 in unpaid attorney's fees plus $1,087,867.29 for "interest and alleged future 'tort causes of action.'"  On March 1, 2011, Ateco objected ("Claim Objection") to Hebb's Claim, on the bases that (1) Hebb failed to provide any evidence he had a valid secured claim, and (2) that the State Trial Court had determined in the Hales Litigation that Hebb's attorneys fees were $200,000.  Hebb did not respond to the Claim Objection, but instead, on March 2, 2011, filed a motion for relief from the automatic stay ("Relief From Stay Motion") to allow arbitration proceedings to go forward.  On March 17, 2011, Ateco filed an adversary complaint ("Adversary Proceeding") against Hebb seeking (1) a determination of the validity of Hebb's asserted lien, and (2) disallowance of Hebb's claim.  Ateco also alleged claims against Hebb based upon breach of fiduciary duty, professional negligence, breach of contract, fraud, and unjust enrichment.

The bankruptcy court heard the Relief from Stay Motion on April 7, 2011 ("April 7 Hearing"), at which time it took the position that judicial economy would not be served by sending the

---

[4](...continued)
all "Local Bankruptcy Rule" references are to the Local Bankruptcy Rules of the Bankruptcy Court for the Central District of California.

[5]    No arbitration proceeding had been initiated as of the Petition Date.

fee dispute to arbitration. The bankruptcy court set a further briefing schedule on the Relief From Stay Motion, giving Hebb until May 5, 2011, to submit a further brief on the issue, and Ateco until June 16, 2011, to respond. At the April 7 Hearing, the Bankruptcy Court also joined the Claim Objection with the Adversary Proceeding ("Substantive Proceedings") and set a schedule for filing documents which would allow a summary judgment motion from Ateco to be heard on July 26, 2011 ("July 26 Hearing") in the Substantive Proceedings in conjunction with the further hearing on the Relief From Stay Motion.

On April 27, 2011, prior to the deadline for filing his additional brief on the Relief From Stay Motion, Hebb filed his first appeal to this Panel ("First Appeal"), requesting that the Panel direct the bankruptcy court to grant the Relief From Stay Motion to allow immediate arbitration of the fee dispute. On June 23, 2011, the Panel in the First Appeal granted a stay of the Substantive Proceedings and remanded to the bankruptcy court to determine "whether the [Arbitration Stipulation] made in the state court proceedings is subject to the [Federal Arbitration Act], and if so, is there any valid basis to deny arbitration." The bankruptcy court held the July 26 Hearing, and in light of the remand from the Panel, orally granted the Relief From Stay Motion and continued the summary judgment proceedings on the Substantive Proceedings to November 9, 2011 ("November 9 Hearing") to allow arbitration proceedings to conclude before ruling on Ateco's summary judgment motion.

6

Ultimately the Panel dismissed the First Appeal as moot because the bankruptcy court had granted the Relief From Stay Motion.[6] However, it was a complicated process getting to that dismissal based substantially on the action, or more precisely, the inaction, of Hebb. As the prevailing party, Hebb was required by Local Bankruptcy Rule 9021-1(1) to prepare and submit an order granting the Relief From Stay Motion. He did not. On December 29, 2011, the Panel, noting that no order had yet been entered granting the Relief From Stay Motion, issued a remand order ("Remand Order"), which directed Hebb to file a written response stating why the First Appeal should not be dismissed as moot in light of the bankruptcy court's July 26, 2011 ruling on the Relief From Stay Motion. The Remand Order also informed Hebb he could request and obtain an order granting the Relief From Stay Motion so that he could proceed with binding arbitration. Despite the Remand Order, Hebb still did not submit an order for the bankruptcy court to sign as required by Local Bankruptcy Rule 9021-1(1). Instead, on January 17, 2012, after learning of the Remand Order, the bankruptcy court entered its own order ("Relief From Stay Order").

The Relief From Stay Order provided that it applied to "the following non-bankruptcy case or administrative proceeding" and identified the Fee Litigation as follows:

Case name:  Hebb vs. Ateco, Inc., et al.
Court or agency where pending:  LA County

---

[6]     The First Appeal was dismissed on February 7, 2012.

7

The Relief From Stay Order further provided:

> 5. Movant may proceed in the non-bankruptcy forum to final judgment (including any appeals) in accordance with applicable non-bankruptcy law.
> . . .
> 6.a. Movant is granted leave to continue with arbitration and liquidate the amount of the claim.

The state court held a status hearing in the Fee Litigation on September 14, 2011, at which time the state court dismissed the Fee Litigation based upon (1) the existence of the Arbitration Stipulation and (2) the bankruptcy court's grant of relief from stay to allow the parties to proceed to arbitration. Hebb did not appear at the status hearing in the Fee Litigation but contends that he was aware of the intended disposition of the Fee Litigation, having "consulted with" the state court prior to the hearing. Thereafter, Hebb requested the assistance of the bankruptcy court in selecting an arbitrator and compelling arbitration, which the bankruptcy court ultimately denied because (1) relief from stay had been granted to proceed to arbitration in the Fee Litigation, and (2) Hebb had provided no authority for the bankruptcy court to compel the arbitration where relief from stay had been granted.

When the bankruptcy court issued a show cause order why both the bankruptcy case and the adversary proceeding should not be dismissed since the parties were making no attempt to resolve the dispute through arbitration, Hebb moved the state court to vacate the dismissal of the Fee Litigation.

The state court held a hearing on the motion on April 18, 2012. At that time the state court clarified that the Relief From Stay

8

Order was broad enough to encompass resolution of the fee dispute outside of the bankruptcy court, construed the motion to vacate as a request to set a trial date on the merits, and offered a trial date of July 2, 2012, contending that the parties should have been nearly ready for trial at the time they entered the Arbitration Stipulation. Hebb declined to proceed to trial, insisting instead upon arbitration, and withdrew his motion to vacate on the record. Hebb apparently was acting under the impression that a motion to compel arbitration could be a separate proceeding such that he no longer needed the Fee Litigation in light of the existence of the Arbitration Stipulation.

Hebb finally initiated arbitration proceedings through JAMS on April 20, 2012. Thereafter, Ateco took the position that the Arbitration Stipulation was ineffective in the face of the dismissal of the litigation in which it arose. Ateco alternatively asserted that the Arbitration Stipulation expired on its own terms when arbitration was not completed by November 15, 2010, and that Hebb, through his delay in initiating arbitration, had waived his right to arbitrate the fee dispute.

On May 9, 2012 ("May 9 Hearing"), the bankruptcy court, apprised of the recent proceedings in the State Trial Court, held a status hearing and took under advisement the issue of whether the bankruptcy case should be dismissed where the fee dispute, resolution of which was central to confirmation of any chapter 11 plan, had stalled the case for more than 21 months.

On June 27, 2012, the bankruptcy court entered its Memorandum

Re: Whether This Case Should Be Dismissed ("Memorandum"). In the Memorandum, the bankruptcy court determined (1) the FAA did not apply to the Arbitration Stipulation, and (2) to the extent the CAA might apply to the Arbitration Stipulation, Hebb, through his delay, had waived any right to enforce the Arbitration Stipulation. In light of that waiver, the bankruptcy court set the Substantive Proceedings for resolution through summary judgment proceedings, with oral argument to be held September 5, 2012. A contemporaneous status hearing was set so that once the fee dispute was resolved, "it will be clear whether the proposed plan can proceed or not, and each of the remaining motions can be addressed in order."

On July 11, 2012, Hebb filed a timely motion for reconsideration of the Memorandum, which the bankruptcy court denied by its order entered July 31, 2012. In the interim, on July 30, 2012, Hebb filed a premature Notice of Appeal from the Memorandum. On July 31, 2012, the bankruptcy court denied Hebb's motion for stay pending appeal. On August 1, 2012, Hebb filed an emergency motion for stay pending appeal with the Panel, which also was denied.

On August 29, 2012, our Clerk issued an "Order re Finality" which required Hebb to establish that the bankruptcy court's order was final such that the Notice of Appeal could confer jurisdiction on the Panel. The Panel thereafter deemed Hebb's response to the Order re Finality to be a motion for leave to appeal, which it granted by order entered October 25, 2012, in order to determine whether any alleged right Hebb had to arbitration was implicated by continuing the Substantive Proceedings in the bankruptcy court.

10

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES[7]

Whether the bankruptcy court erred when it determined that the FAA did not apply to the Arbitration Stipulation.

Whether the bankruptcy court abused its discretion when it determined that Hebb had waived any right to arbitration he might have had under the CAA.

## IV. STANDARDS OF REVIEW

Whether a dispute is subject to the Federal Arbitration Act is a question of law we review de novo. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)(by its terms the Arbitration Act leaves no place for the exercise of discretion by a trial court). De novo review requires that we consider a matter afresh, as if no decision had been rendered previously. United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988); B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 229 (9th Cir. BAP 2008).

We review the bankruptcy court's determination that Hebb waived his right to arbitrate under the CAA for an abuse of discretion. "'[T]he question of waiver is one of fact, and an appellate court's

---

[7] Hebb did not raise any issue in this appeal with respect to the denial of the motion for reconsideration. Accordingly, any such issue is waived. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001) (issues not specifically argued in opening brief are waived).

11

function is to review a trial court's findings regarding waiver to determine whether [they] are supported by substantial evidence.' 'The appellate court may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver.'" (Internal citations omitted). <u>Augusta v. Keehn & Assocs.</u>, 193 Cal. App. 4th 331 (2011) (quoting <u>Berman v. Health Net</u>, 80 Cal. App. 4th 1359, 1363-1364 (2000)).

We apply a two-part test to determine whether the bankruptcy court abused its discretion. <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. <u>Id.</u> Then, we review the bankruptcy court's fact findings for clear error. <u>Id.</u> at 1262 & n.20. We must affirm the bankruptcy court's fact findings unless we conclude that they are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" <u>Id.</u>

This standard of review is similar to that applied by California appellate courts. Under California law, "[a]n abuse of discretion is shown if there is no substantial basis for the trial court's ruling or the court applied an incorrect legal standard." <u>Ibarra v. Super. Ct.</u>, ___ Cal. Rptr. 3d ___, 2013 WL 3242955 (Cal. App. 2d Dist. 2013)(citation omitted).

V. DISCUSSION

I. <u>The FAA Does Not Apply to the Fee Dispute</u>.

The FAA applies to maritime transactions or contracts "evidencing a transaction involving commerce. . . ." 9 U.S.C. § 2.

12

The FAA defines "commerce" to exclude purely intrastate contracts. 9 U.S.C. § 1 ("'[C]ommerce,' as defined herein, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia and any State or Territory or foreign nation. . . ."). Thus, the bankruptcy court did not err when it determined the FAA did not apply to the Arbitration Stipulation.

> The dispute underlying the Arbitration Stipulation arises out of wholly intrastate legal services between a California attorney and a California client, conducted solely in a California state court. No portion of this transaction affects interstate commerce. It is inappropriate to apply the FAA to the Arbitration Stipulation.

Memorandum at 11:20-23.

## II. Hebb Waived Any Right He Might Have Had to Compel Arbitration Under the CAA.

The CAA provides:

> A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.

Cal. Code Civ. Proc. § 1281. As noted by the bankruptcy court, waiver not only is a ground for revocation of contracts generally, it is an explicit basis upon which the right to arbitration may be denied.

> On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and respondent to arbitrate the controversy if it determines than an agreement to arbitrate the controversy exists, unless it determines that:

13

        (a)  The right to compel arbitration has been waived by the petitioner. . . .

Cal. Code Civ. Proc. § 1281.2 (emphasis added).

The issue of waiver under the CAA is not novel.  The Supreme Court of California has identified the factors a trial court must consider in determining whether a right to arbitration has been waived:

> In determining waiver, a court can consider: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g. taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced, the opposing party.

St. Agnes Med. Ctr. v. PacifiCare of Cal., 31 Cal. 4th 1187, 1196 (2003)(internal quotation marks and citations omitted).

The bankruptcy court observed that waiver under the CAA is commonly found "where the party seeking arbitration has . . . unreasonably delayed in seeking arbitration."  Memorandum at 12:25-26 (citing Augusta, 193 Cal. App 4th at 337).  However, the bankruptcy court also noted the existence of a strong public policy favoring arbitration as a counterpoint to waiver.  Memorandum at 12:15-18 (citing St. Agnes Med. Ctr., 31 Cal. 4th at 1195).

Under the unreasonable delay standard, Hebb was responsible to "timely seek relief either to compel arbitration or dispose of the

14

lawsuit." <u>Lewis v. Fletcher Jones Motor Cars, Inc.</u>, 2012 Cal. App. LEXIS 489 *10 (Cal. App. 4th Dist. 2012). The bankruptcy court reviewed Hebb's actions in seeking arbitration and concluded that they supported a finding that Hebb had waived his right to arbitration under the CAA.

First, Hebb waited approximately five months after Ateco filed its bankruptcy case to file the Relief From Stay Motion. Second, after the Panel issued its remand in the First Appeal, the bankruptcy court orally granted the Relief From Stay Motion at the July 26 Hearing. Hebb thereafter failed completely to pursue the entry of an order which would allow him to proceed with arbitration. He was on notice through the bankruptcy court's local rules that, as the prevailing party, the responsibility to submit an order was his. Hebb did not act as required under the local rules. Neither did he act when, in the First Appeal, we brought the lack of an order to his attention and reminded him that he could request the order from the bankruptcy court. Ultimately, the bankruptcy court itself prepared and entered the Relief From Stay Order on January 17, 2012. Hebb is accountable for the nearly six-months delay in the entry of the Relief From Stay Order.

Even then, Hebb took no appropriate action to pursue arbitration until the bankruptcy court issued its order to show cause. While during this time Hebb did request that the bankruptcy court compel arbitration, that action was not within the realm of the bankruptcy court's authority where relief from stay had been granted to proceed to arbitration through the Fee Litigation and

15

therefore was meaningless other than to delay and confuse the proceedings. We also note that the state court was prepared to try the Fee Litigation by July 2, 2012, which would have "disposed of the lawsuit." Instead, Hebb chose to withdraw the dispute from the purview of the state court and initiate an arbitration despite protestations from Ateco regarding the continuing validity of the Arbitration Stipulation, thus again delaying any ultimate resolution of the dispute.[8]

The bankruptcy court cited numerous California state court decisions in which a party was found to have waived its right to arbitration based on delays significantly shorter than the twenty-one months involved in the fee dispute here. See, e.g., Lewis, 2012 Cal. App. LEXIS 489 (less than five months); Augusta, 193 Cal. App 4th 331 (six-and-one-half months); Adolph v. Coastal Auto Sales, Inc., 184 Cal. App. 4th 1443 (2010) (six months); Guess?, Inc. v. Super. Ct., 79 Cal. App. 4th 553, 556 (2000) (less than four months); Kaneko Ford Design v. Citipark, Inc., 202 Cal. App. 3d 1220, 1228-29 (1988) (five-and-one-half months). These cases adequately support the bankruptcy court's fact finding that Hebb's delay in exercising his right to arbitrate under the CAA was

_____

[8] An additional, affirmative, waiver of his right to arbitrate the fee dispute under the CAA is reflected in Hebb's argument to the bankruptcy court at the November 9 Hearing, where he states his understanding that only the FAA applied to the Arbitration Stipulation. See Tr. of November 9, 2011 Hr'g at 10:13-11:19. It appears this also was the basis for Hebb's withdrawal of his motion to vacate dismissal of the Fee Litigation in the state court.

16

unreasonable.

In evaluating whether a delay is sufficient to support a finding that a party has waived its rights under the CAA, California courts also consider not only whether the delay was unreasonable, but whether it was prejudicial to the other party. See Augusta, 193 Cal. App 4th at 337, 340-42. Here, Ateco has pending a relatively small chapter 11 case. It is self-evident that the prospects for a reorganization do not get better the longer a case lingers. As the bankruptcy court stated numerous times, until the Fee Dispute is resolved, no determination can be made whether Ateco's reorganization efforts ultimately will be viable. Ateco has been further prejudiced by the excessive cost it has incurred in responding to Hebb's uncertainty about how, and even where, to proceed to enforce the Arbitration Stipulation.

Under these circumstances, we cannot determine that the bankruptcy court abused its discretion when it found that Hebb had waived his right to arbitration under the CAA.[9]

---

[9] Hebb filed his proof of claim in Ateco's bankruptcy case, and Ateco objected to the claim. Pursuant to 28 U.S.C. § 157(b)(2)(B), allowance or disallowance of Hebb's claim is a core proceeding, notwithstanding that state law might be applied to resolve the fee dispute. Under Ninth Circuit precedent, the bankruptcy court had discretion to decline to enforce the Arbitration Stipulation in a core proceeding if arbitration would conflict with the underlying purposes of the Bankruptcy Code. Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011 (9th Cir. 2012). Thorpe Insulation stands as an alternative basis upon which the bankruptcy court could have proceeded to resolve the fee dispute, independent of any waiver by Hebb under the CAA.

17

## VI. CONCLUSION

The bankruptcy court correctly determined that the Arbitration Stipulation was not subject to the FAA, where it did not implicate interstate commerce. The bankruptcy court did not abuse its discretion when it determined that Hebb waived his right to enforce the Arbitration Stipulation under the CAA through his dilatory lack of action over a prolonged period. We AFFIRM.

18