**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: JOSÉ EBER,
                            *Debtor,*

MICHAEL ACKERMAN; FLOYD
KURILOFF,
                            *Appellants,*

              v.

JOSÉ EBER,
                            *Appellee.*

No. 10-56772

D.C. No.
2:10-cv-04974-GW

In the Matter of: JOSÉ EBER,
                            *Debtor,*

MICHAEL ACKERMAN; FLOYD
KURILOFF,
                            *Appellants,*

              v.

JOSÉ EBER; CAROLYN A. DYE,
Trustee; US TRUSTEE,
                            *Appellees.*

No. 11-55341

D.C. No.
2:10-cv-07222-GW

OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted
April 9, 2012—Pasadena, California

Filed July 9, 2012

7887

Before: Andrew J. Kleinfeld and Milan D. Smith, Jr.,
Circuit Judges, and Algenon L. Marbley, District Judge.*

Opinion by Judge Marbley

---

*The Honorable Algenon L. Marbley, United States District Judge for
the Southern District of Ohio, sitting by designation.

## COUNSEL

Ronald M. Greenberg (argued), Dykema Gossett LLP, California, for the appellants.

Jeffrey S. Shinbrot (argued), Jeffrey S. Shinbrot, APLC, California, for the appellee.

## OPINION

MARBLEY, District Judge:

Appellants Michael Ackerman and Floyd Kuriloff appeal the district court's orders affirming the bankruptcy court's denial of three motions: (1) Motion to Compel Arbitration and to Stay Adversary Proceeding[1] ("Motion to Compel Arbitration"); (2) Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 ("Motion for Relief from Automatic Stay"); and (3) Motion to Vacate Order re Automatic Stay ("Motion to Vacate"). This appeal turns on the tension between the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), and the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*[2] ("Bankruptcy Code"), and more specifically, a bankruptcy court's jurisdiction to determine dischargeability pursuant to §§ 523(a)(2), (4), and (6).

We hold that the district court did not abuse its discretion in denying Ackerman and Kuriloff's Motion to Compel Arbitration because granting the Motion would have "conflict[ed] with the underlying purposes of the Bankruptcy Code." *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation),* 671 F.3d 1011, 1021 (9th Cir. 2012); *see also United States Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re United States Lines, Inc.),* 197 F.3d 631, 641 (2d Cir. 1999) ("Where the bankruptcy court has properly considered

---

[1]On appeal, Ackerman and Kuriloff advance arguments related only to the Motion to Compel Arbitration. This Court already denied Ackerman and Kuriloff's Motion to Stay Adversary Proceeding Pending Appeal on March 7, 2011.

[2]Hereinafter, all section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, unless otherwise noted.

the conflicting policies in accordance with law, we acknowledge its exercise of discretion and show due deference to its determination that arbitration will seriously jeopardize a particular core bankruptcy proceeding.").

We need not address the district court's decision affirming the bankruptcy judge's denial of Ackerman and Kuriloff's Motion for Relief from the Automatic Stay or the Motion to Vacate because the stay had already dissolved before the bankruptcy judge ruled on these Motions. The stay dissolved when the bankruptcy judge issued a discharge under § 727, replacing the stay with an injunction under § 524. *Aldrich v. Imbrogno (In re Aldrich)*, 34 B.R. 776, 779 (9th Cir. B.A.P. 1983). Therefore, the result of this case would be unaffected regardless of whether we affirmed or reversed these Motions.

## I.  BACKGROUND

On May 21, 2009, Ackerman and Kuriloff commenced an arbitration proceeding against Eber in New York, New York pursuant to terms of a written agreement between the parties. Neither party disputes the terms of the written agreement. Damages, which were sought based upon claims for breach of contract, fraud, and breach of fiduciary duty in connection with the construction and operation of Eber's hair salon in Las Vegas, Nevada, were alleged to be approximately $3.3 million. Eber filed for Chapter 7 bankruptcy protection in the bankruptcy court on June 16, 2009, and the arbitration was automatically stayed.

On September 8, 2009, Ackerman and Kuriloff filed a Complaint for Determination that Debts are Non-Dischargeable and for Damages ("Complaint") in the bankruptcy court's adversary proceeding. On December 23, 2009, Ackerman and Kuriloff filed a Motion for Relief from Automatic Stay in the bankruptcy proceeding asking the bankruptcy court to allow them to proceed with arbitration of their claims. A hearing on that Motion was set for March 16, 2010.

Eber's bankruptcy trustee filed a Report of No Distribution on January 17, 2010, and Eber received his discharge under § 727 on March 4, 2010. Ackerman and Kuriloff's Motion for Relief from Automatic Stay was denied by the bankruptcy court on March 22, 2010.

On April 1, 2010, Ackerman and Kuriloff filed a Motion to Vacate the bankruptcy court's decision denying the Motion for Relief from Automatic Stay in the bankruptcy proceeding and, simultaneously, a Motion to Compel Arbitration in the adversary proceeding. The Motion to Compel Arbitration was denied on June 10, 2010, and the Motion to Vacate was denied June 30, 2010. Ackerman and Kuriloff also filed a Request to Stay the Adversary Proceeding Pending Appeal of the denial of their Motions, but the bankruptcy court denied that request as well.

Ackerman and Kuriloff filed an appeal of the denial for their Motion to Compel Arbitration with the district court on June 23, 2010, and the district court affirmed the denial on October 26, 2010. Ackerman and Kuriloff filed a Notice of Appeal on November 11, 2010.

Ackerman and Kuriloff also filed an appeal of the denial for their Motion for Relief from Automatic Stay and Motion to Vacate with the district court on July 13, 2010, and the district court affirmed the denial on February 1, 2011. Ackerman and Kuriloff filed a Notice of Appeal to this Court on March 2, 2011.

The adversary proceeding was set for trial on March 9, 2011, and Motions to Stay the Adversary Proceeding Pending Appeal of the denial of their Motions were filed in both the district court and with us, but both courts denied Plaintiffs' request. The trial was held on March 9, 2011.[3] The bank-

---

[3]Eber requests we take judicial notice of several documents filed in the bankruptcy court. We deny the request because consideration of the documents in question would not affect our decision.

ruptcy court found that Plaintiffs had not proven the elements necessary to prevail under §§ 523(a)(2), (4), and (6), and held that Ackerman and Kuriloff's claims were therefore discharged. The bankruptcy court filed Findings of Fact and Conclusions of Law, and a Judgment on March 29, 2011. This appeal followed.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We also have jurisdiction under 28 U.S.C. § 158(d) and 9 U.S.C. § 16(a)(1)(B). *See Thorpe Insulation*, 671 F.3d at 1019.

## III. STANDARD OF REVIEW

This Court generally reviews motions to compel arbitration *de novo. See Britton v. Co-Op Banking Grp.*, 916 F.2d 1405, 1409 (9th Cir. 1990); *Pipe Trades Council of N. Cal., Local 159 v. Underground Contractors Ass'n of N. Cal.*, 835 F.2d 1275, 1278 (9th Cir. 1988). To the extent the bankruptcy court made factual findings in connection with its decision to deny Ackerman and Kuriloff's Motion to Compel Arbitration, however, we will review these factual determinations for clear error, and its legal conclusions *de novo. See Thorpe Insulation,* 671 F.3d at 1019 (citing *Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1109 (9th Cir. 2010)).

## IV. ANALYSIS

Ackerman and Kuriloff attempt to parse the underlying dispute between the parties into "three separate and distinct claims": (1) liability, (2) damages, and (3) if liability is found, dischargeability. They argue that liability and damages are non-core matters based on New York law,[4] and that dischar-

---

[4]In their written agreement, the parties agreed to be bound by New York law.

geability is a core matter based upon the Bankruptcy Code. Ackerman and Kuriloff argue that where there are both non-core and core claims involved, the right to arbitration cannot be denied unless the party opposing the motion to compel arbitration shows, and the bankruptcy court makes a finding that, enforcing the parties' arbitration agreement would inherently conflict with the Bankruptcy Code or necessarily jeopardize its objectives. Appellants further contend that no such finding was made by the bankruptcy court. Rather, the bankruptcy court's decision to deny their Motion to Compel Arbitration was based upon its view that it could be barred from deciding issues related to dischargeability as a result of collateral estoppel if an arbitrator made certain findings.

Eber retorts that Ackerman and Kuriloff admitted in their Complaint that the claims they assert against Eber constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I), despite now arguing that liability and damages should be treated as non-core claims. Eber also points out that the bankruptcy court made factual findings that, by seeking to compel arbitration, Ackerman and Kuriloff were attempting to have an arbitrator determine the dischargeability of their §§ 523(a)(2), (4), and (6) claims.

The bankruptcy court denied Ackerman and Kuriloff's Motion to Compel Arbitration, finding unpersuasive their argument that they were simply seeking to enforce their contractual right to arbitrate liability and damages, and intended to leave the determination of dischargeability for the bankruptcy court to decide. The bankruptcy court explained:

> Mr. GREENBERG: We are not asking the arbitrator to decide dischargeability. We have never asked that.

> THE COURT: Oh, I know you say that. But I respectfully disagree.

> Mr. GREENBERG: Okay.

> THE COURT: That's really what you you're asking. What you are asking is for that arbitrator to decide things which then would be collateral estoppel. Of course, that's what you're doing—
>
> Mr. GREENBERG: Well—
>
> THE COURT: —because there's no other reason— let's not kid each other. Of course, that's what you're doing.
>
> Mr. GREENBERG: Okay.
>
> THE COURT: So if in fact they make the required findings, then for all practical purposes, the arbitrator is deciding it, even though technically not.

The district court noted that implicit in the bankruptcy court's ruling was the "recognition that establishing liability on causes of action based on fraud pursuant to 11 U.S.C. § 523(a)(2), breach of fiduciary duty pursuant to 11 U.S.C. § 523(a)(4), and intentional acts based on § 523(a)(6), is tantamount to establishing non-dischargeability." This district court held that the bankruptcy court made a factual determination that the claims Ackerman and Kuriloff sought to arbitrate "go to the issue of dischargeability," and that "arbitration of dischargeability inherently conflicts with the goals of centralized resolution of bankruptcy issues, preventing piecemeal litigation, and the power of a bankruptcy court to enforce its own orders."

### A. Relevant Provisions of the Bankruptcy Code

**[1]** When a bankruptcy petition is filed, § 362 automatically provides the debtor with a broad stay against certain actions by creditors. Section 727(a) states that "[t]he court shall grant the debtor a discharge" unless certain circumstances existed, none of which was applicable in this case. If

and when a debtor is granted discharge, as Eber was here, § 362's automatic stay dissolves and is replaced by a permanent injunction under § 524. Section 524(a) in relevant part provides that a discharge under Title 11:

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . ;

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, . . . .

The permanent injunction under § 524(a)(2), therefore, enjoins creditor actions related to discharged debts. But § 727(b) provides in pertinent part:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, . . . .

As such, § 524 does not enjoin creditors who have successfully invoked § 523, which provides a list of exceptions to discharge, from taking action. *See also In re Aldrich*, 34 B.R. at 779 (explaining how §§ 362, 523, 524, and 727 work together).

Exceptions to discharge under § 523 fall into two major categories: debts over which the bankruptcy court has exclusive jurisdiction to determine dischargeability, and those that it does not. *See* 11 U.S.C. § 523(c)).[5] Bankruptcy courts have

---

[5]Section 523(c)(1) provides in relevant part: "the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of sub-

exclusive jurisdiction to determine dischargeability of debts under §§ 523(a)(2) (fraud or deception); (a)(4) (fiduciary fraud, embezzlement, or larceny); and (a)(6) (willful and malicious injury to person or property). *Id.*; *see In re Aldrich*, 34 B.R. at 781 (explaining that claims that debts are nondischargeable under §§ 523(a)(2), (4) and (6) "may not be pursued in the state court as a result of the exclusive jurisdiction granted to the bankruptcy court by the bankruptcy code"); *see also Grogan v. Garner*, 498 U.S. 279, 284 n. 10 (1991) ("The 1970 amendments took jurisdiction over certain dischargeability exceptions, including the exceptions for fraud, away from the state courts and vested jurisdiction exclusively in the bankruptcy courts.") (citations omitted). With respect to all other subsections of § 523(a), bankruptcy courts have concurrent rather than exclusive jurisdiction to determine whether a debt is excepted from discharge. *In re Aldrich*, 34 B.R. at 780.

## B.    *The* McMahon *Framework*

**[2]** As noted, the threshold issue on this appeal is how to reconcile the FAA with the Bankruptcy Code, and, more specifically, a bankruptcy court's jurisdiction to determine dischargeability pursuant to §§ 523(a)(2), (4) and (6). *See In re United States Lines*, 197 F.3d at 640 (explaining that disputes involving the Bankruptcy Code and the FAA often "present a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution."). The FAA provides, in relevant part, that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," and that a court must stay a proceeding if it is satisfied that an issue in the proceeding is arbitrable

section (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section."

under such an agreement. 9 U.S.C. §§ 2-3; *see Thorpe Insulation*, 671 F.3d at 1020 (quoting the FAA). While the FAA establishes a federal policy of favoring arbitration, "[l]ike any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). The party that is opposing arbitration has the burden of proving "that Congress intended to preclude a waiver of judicial remedies for [the particular claim] at issue." *Id.* at 227.

The Supreme Court has constructed a framework under which courts can analyze how the FAA and a particular statute interact. *See id.* To determine if Congress intended to override the FAA's policy favoring arbitration in a particular statute, courts must examine: (1) the text of the statute; (2) its legislative history; and (3) whether an inherent conflict between arbitration and the underlying purposes of the statute exist. *Id.* Our Circuit recently addressed "whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code" as an issue of first impression under *McMahon*, in *Thorpe Insulation*, 671 F.3d at 1020.

This Circuit and sister circuits applying the *McMahon* factors to the Bankruptcy Code have found no evidence in the text of the Bankruptcy Code or in the legislative history suggesting that Congress intended to create an exception to the FAA in the Bankruptcy Code. *Thorpe Insulation*, 671 F.3d at 1020 ("Neither the text nor the legislative history of the Bankruptcy Code reflects a congressional intent to preclude arbitration in the bankruptcy setting."); *The Whiting-Turner Contracting Co. v. Elec. Mach. Enter., Inc. (In re Elec. Mach. Enter., Inc.)*, 479 F.3d 791, 796 (11th Cir. 2007) (same); *Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222, 231 (3d Cir. 2006) (same). The relevant inquiry then becomes "whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code." *Thorpe Insulation*, 671 F.3d at 1020.

**[3]** In *Thorpe Insulation*, an insurance company pursued a breach of contract claim related to the terms of a settlement agreement against an insulation company that was in asbestos-related, Chapter 11 bankruptcy. *Id.* at 1014-16. Upon the insulation company's filing for Chapter 11 bankruptcy, an automatic stay was entered pursuant to § 362, and the insurance company moved to compel arbitration pursuant to the terms of the settlement agreement. *Id.* at 1016. The bankruptcy court denied the motion to compel arbitration, holding that the allowance or disallowance of the insurance company's claim was a core matter, and that it was exercising its discretion to prevent arbitration because: "[a]lthough the conduct of which [the insurance company] complains may have commenced prepetition, the acts of which [it] complain[s], if true, are inextricably intertwined with the manner" in which the insulation company completes its reorganization. *Id.* at 1017. The district court affirmed the bankruptcy court's holding, and the insurance company appealed. *Id.* at 1018-19.

The *Thorpe Insulation* Court held that the core versus non-core distinction made by other circuit courts[6] "though rele-

---

[6]The core versus non-core distinction has been articulated by our sister circuits as follows: generally, bankruptcy judges do not have discretion to refuse to compel arbitration of non-core matters because they are generally only tangentially related to a bankruptcy case. *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) (citing *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)*, 226 F.3d 160, 166 (2d Cir. 2000)); *see MCI Telecomms. Corp. v. Gurga (In re Gurga)*, 176 B.R. 196, 199 (9th Cir. B.A.P. 1994) (holding that a bankruptcy court did not have discretion to refuse to enforce an arbitration clause in a prepetition agreement where the underlying action was based on a non-core breach of contract claim). Bankruptcy courts may, however, exercise discretion to refuse to compel arbitration of core bankruptcy matters, which implicate "more pressing bankruptcy concerns." *MBNA Am. Bank*, 436 F.3d at 108 (citing *In re United States Lines, Inc.*, 197 F.3d at 640). Yet, even as to core proceedings, "the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the Arbitration Act or that arbitration of the claim would 'necessarily jeop-

vant, is not alone dispositive," and explained that it would "join our sister circuits in holding that, even in a core proceeding, the *McMahon* standard must be met—that is, a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code." *Id.* at 1021 (citations omitted). The *Thorpe Insulation* Court went on to adopt the bankruptcy court's rationale that the resolution of the insurance company's claim was a core proceeding, regardless of the fact that the insurance company was attempting to characterize it as a "state law breach of contract claim," because ultimately the insurance company had filed a claim, and under 28 U.S.C. § 157(b)(2)(B), the allowance or disallowance of that claim was a core proceeding. *Id.* The bankruptcy court had discretion to deny the motion to compel because "the nature of the allegations were such that adjudication of [the insurance company's] claim in any forum other than a bankruptcy court would conflict with fundamental bankruptcy policy." *Id.* at 1022.

## C. Application of the McMahon Framework and Circuit Precedent

[4] The district court did not err when it affirmed the bankruptcy court's denial of Ackerman and Kuriloff's Motion to Compel Arbitration. Similar to the bankruptcy court in *Thorpe Insulation*, the bankruptcy court here determined that although Ackerman and Kuriloff were attempting to designate their underlying state law breach of contract, fraud, and breach of fiduciary duty claims as non-core, arbitrable claims, in actuality, they were seeking to arbitrate dischargea-

---

ardize' the objectives of the Bankruptcy Code." *Id.* (citing *In re United States Lines, Inc.*, 197 F.3d at 640); *see also In re Elec. Mach. Enter.*, 479 F.3d at 795-96 (explaining that bankruptcy courts lack discretion to deny arbitration of non-core matters, and, if the matters are core, the bankruptcy court must determine if allowing arbitration would conflict with the underlying purpose of the Bankruptcy Code).

bility under §§ 523(a)(2), (4) and (6), a core bankruptcy issue. *See* 28 U.S.C. § 157(b)(2)(I) ("Core proceedings include, . . . determinations as to the dischargeability of particular debts.").

**[5]** We agree with the district court's conclusion that implicit in the bankruptcy court's reasoning is the conclusion that allowing an arbitrator to decide issues that are so closely intertwined with dischargeability would "conflict with the underlying purposes of the Bankruptcy Code." *See Thorpe Insulation*, 671 F.3d at 1021. Courts must consider the Bankruptcy Code's objectives, including centralization of disputes concerning a debtor's legal obligations, and protection of debtors and creditors from piecemeal litigation. *See id.* at 1022-23. When a bankruptcy court considers conflicting policies as the bankruptcy court did here, we acknowledge its exercise of discretion and defer to its determinations that arbitration will jeopardize a core bankruptcy proceeding. *See MBNA Am. Bank*, 436 F.3d at 107 (internal citations omitted).

We find unpersuasive Ackerman and Kuriloff's argument that the bankruptcy court inappropriately denied them the opportunity to arbitrate because it was concerned about being collaterally stopped by the arbitrator's decision. The Supreme Court has stated, indeed, that collateral estoppel applies in bankruptcy dischargeability proceedings. *Grogan*, 498 U.S. at 285 n. 11 ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). Moreover, this Court has applied collateral estoppel principles in the context of dischargeability. *See, e.g., In re Stasz*, 352 F. App'x 154, 155 (9th Cir. 2009) (finding a claim was nondischargeable where the issue of whether conduct was willful and malicious was "actually litigated and necessarily decided on the merits in the confirmed final arbitration award"). But there is an important distinction between collateral estoppel and *potential* collateral estoppel. Ackerman and Kuriloff were not attempting to enforce a prior arbitration judgment because one did not exist. The bankruptcy judge made a determination—prior to an arbitration beginning

—that allowing an arbitrator to decide the issues related to dischargeability in this case would conflict with important bankruptcy principles. Our holding in no way extends beyond the particular facts of this case or to all cases in which a bankruptcy judge makes this determination prior to the commencement of an arbitration.

Appellants also argue that the Supreme Court's recent decision in *KPMG LLP v. Cocchi*, 132 S. Ct. 23 (2011) (per curiam) "mandates that arbitration be allowed prior to the bankruptcy court determining nondischargeability." (Doc. 43 at 2.) In *KPMG*, the Supreme Court reversed the Court of Appeals, which had refused to compel arbitration on a complaint as a whole because the arbitral agreement did not apply to direct claims, and two of the four claims were direct. *Id.* at 26. The Court of Appeals said nothing about the other two claims. *Id.* at 25. The Supreme Court held that "[a] court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration." *Id.* at 24.

These facts are distinguishable from the case sub judice. First, *KPMG* was not a bankruptcy case and did not deal with issues related to dischargeability. Second, in this case, we are not presented with some arbitratable and some non-arbitratable claims; rather, the lower courts concluded correctly that Plaintiffs were trying to arbitrate dischargeability, a core matter which bankruptcy courts have special expertise to decide.

Nor does this Court find persuasive Appellants' reliance on *In re Hermoyian*, 435 B.R. 456 (E.D. Mich. 2010). While it is true *Hermoyian* also involved a creditor who first filed an adversary proceeding seeking a determination of nondischargeability of debt allegedly owed to him under §§ 523(a)(2), (4), and (6), and then filed a motion for relief from automatic stay to proceed with arbitration, the case is distinguishable for multiple reasons. *Id.* at 458.

In *Hermoyian* the creditor's motion for relief from the automatic stay alleged that he and the debtor were parties to a state court lawsuit involving various disputes between the creditor and debtor and a number of other business entities. *Id.* Moreover, the business relationship had extended over a lengthy period of time and involved multiple entities. *Id.* Just five days prior to trial, the creditor and debtor stipulated entry of an order providing that their disputes in the state court lawsuit would be submitted to arbitration. *Id.* While the arbitration with the debtor and creditor never began because the debtor filed for Chapter 7 bankruptcy first, the arbitration between the creditor and business entities had proceeded for four and a half days until the business entities filed bankruptcy petitions of their own. *Id.* at 459.

Therefore, although the bankruptcy court granted the creditor's motion for relief from the automatic stay to allow the parties to proceed with arbitration, judicial economy *was served* given the particular facts of the case. *Id.* at 459, 465-66. The arbitrator was already familiar with the facts surrounding the state court lawsuit because the arbitration between the debtor and the business entities had gone forward. In addition, the creditor and debtor stipulated to arbitration just prior to trial in an attempt to resolve their dispute. The same persuasive facts do not exist here where the bankruptcy judge was more familiar with the dispute between Ackerman and Kuriloff and Eber than an arbitrator in an arbitration that had not yet begun.

## V.  CONCLUSION

**[6]** For the reasons stated herein, we AFFIRM the district court's decision affirming the bankruptcy court's denial of the Motion to Compel Arbitration. It is unnecessary to address the district court's decision affirming the bankruptcy court's denial of the Motion for Relief from the Automatic Stay and Motion to Vacate because the ultimate result in this case

would be unaffected regardless of whether we affirmed or reversed the Motions.