**NOT FOR PUBLICATION**

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-15-1420-KiTaKu |
| PETER EMANUEL KVASSAY, | Bk. No.   2:12-bk-40267-DS |
| Debtor. | |

PETER EMANUEL KVASSAY,

               Appellant,

v.                                         **M E M O R A N D U M**[1]

ROBERT V. KVASSAY, Trustee of
the Kvassay Family Trust dated
February 26, 1993; RUSSAKOW &
TAN, LLP; RUSSAKOW, GREENE &
TAN LLP; MATTHEW C. BROWN,

               Appellees.

Argued and Submitted on September 22, 2016,
at Pasadena, California

Filed - October 6, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding

Appearances:     Troy A. Stewart argued for appellant, Peter E.
Kvassay; Matthew C. Brown of the Law Office of
Matthew C. Brown argued for appellee, Robert V.
Kvassay, Trustee of the Kvassay Family Trust dated
02/26/1993.

Before:   KIRSCHER, TAYLOR and KURTZ, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, it has no precedential value.  See 9th Cir. BAP Rule 8024-1.

Chapter 7[2] debtor Peter E. Kvassay[3] appeals an order denying his motion for an order to show cause why appellee Robert V. Kvassay, Trustee of the Kvassay Family Trust dated 02/26/1993 ("Trust"), should not be held in contempt for violating the discharge injunction. During Peter's bankruptcy case, Robert obtained relief from the automatic stay to proceed to final judgment in a probate action that had been filed against Peter prepetition. Robert also filed a timely adversary complaint, seeking to except the probate action debts from Peter's discharge under § 523(a)(2), (4) and (6).

During the course of the probate action, but before the dischargeability action had been decided, Peter received his discharge. Peter contends that because Robert did not obtain the probate judgments against him until after his discharge was entered, the debts subject to these judgments were discharged, the judgments are void and Robert's actions violated and continue to violate the discharge injunction under § 524(a)(2). The bankruptcy court denied Peter's motion. We AFFIRM.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.    Prepetition events**

Peter and Robert are brothers. They have a third brother, Richard Kvassay. The brothers each hold a one-third beneficial interest in property held by the Trust established by their

---

[2]  Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3]  Since both parties have the same surname, we refer to them by first name to avoid confusion. No disrespect is intended.

-2-

parents, who are now deceased. The Trust corpus consists of a 3.5 acre residential estate located in Los Angeles (the "Hill Drive Property"), which includes a 5,400 square foot main house and two guest houses. The recent relationship between Robert and his two brothers has been contentious at best.

Upon their parents' death, Peter became the trustee of the Trust in October 2006. In January 2007, Peter resigned as trustee and Robert succeeded him as trustee. Peter's resignation and Robert's succession as trustee was memorialized in a document referred to as the "Work Plan." The Work Plan also included the brothers' agreement to repair and sell the Hill Drive Property and discussed how expenses related to those efforts would be handled. At the time, Peter and Richard lived at the Hill Drive Property and had done so since the 1980's and 1960's, respectively.

Robert was in charge of renovating the Hill Drive Property, which had fallen into severe disrepair at the hands of his brothers. The property had no running water or functioning sewer pipes for approximately seven years, and all three houses on the estate had severe rodent infestations, mountains of decaying paper and food material, hoards of clothing and other personal items, junk cars and even human waste. Robert ultimately expended several hundred thousand dollars of his own money to clean and renovate the Hill Drive Property. In the end, Peter and Richard prevented Robert from completing the necessary cleaning and repairs for sale of the property.

In July 2007, and unbeknownst to Robert, Peter represented himself as trustee of the Trust and obtained a $1.5 million loan secured by the Hill Drive Property. Robert learned of the loan in

-3-

February 2008 and requested an accounting and attempted to recoup the monies from Peter. Peter failed to account for approximately $800,000. When Peter refused to make payments on the loan, Robert obtained a personal loan for the same amount to prevent foreclosure of the Hill Drive Property.

In 2010, Robert, on behalf of the Trust, sued Peter and Richard, seeking the following relief: (1) eviction of Peter and Richard; (2) a determination that the Work Plan had no legal effect; (3) a determination that the $1.5 million loan Peter obtained was Trust property; and (4) an offset against Peter's distributive share of $1.5 million, plus attorney's fees and costs, based on his fraud and willful acts to thwart the repair and sale of the Hill Drive Property, or, if the $1.5 million exceeded his distributive share, that Peter be personally liable for the remaining amount he fraudulently obtained (the "Probate Action").

The state court initially ordered Peter and Richard to vacate the Hill Drive Property and authorized Robert to remove their personal belongings in order to complete repairs and sell it. Peter and Richard appealed that ruling and lost; they were also denied review by the California Supreme Court. To stay the eviction on appeal, Peter and Richard posted an appeal bond of $216,000, which Robert later tried to recover after his brothers had exhausted their appeals with respect to the eviction (the "Bond Funds").

Meanwhile, Robert filed his first accounting in the Probate Action to report all administrative expenses for the Trust from the period of January 2007 to June 2010. Robert claimed he was

-4-

due $221,000 based on the Work Plan for expenses related to repairs on the Hill Drive Property ("Work Plan Claim I"). Robert also requested reimbursement for funds he personally expended in repairing and maintaining the Hill Drive Property totaling $447,731.66 ("Work Plan Claim II").

In November 2011, Peter and Richard sued Robert for, among other things, fraud and breach of contract (the "Civil Action").

**B.     Postpetition events**

Peter filed his chapter 7 bankruptcy case on September 5, 2012. He listed Robert as an unsecured creditor in his Schedule F with the following claims: (1) Probate Claim, May 2010, $1,500,000; (2) Probate Claim, October 2010, $216,000; (3) Civil Action Claim, August 2012, $10,500; (4) Probate Claim, February 2011, $2,100. Peter also listed the Probate Action and the Civil Action in his Statement of Financial Affairs.

Although not mentioned in Peter's opening appeal brief or included in his excerpts of the record, Robert moved for relief from the automatic stay and/or annulment of the stay in September 2012, seeking to proceed with the pending Probate Action and related Civil Action in state court, and for a determination that any actions taken in those proceedings postpetition were not void. A fourteen-day trial in the Probate Action was set for January 13, 2013. The bankruptcy court granted Robert's motion, terminating the stay and annulling it retroactively to the petition date. The stay relief order authorized Robert to proceed to final judgment (including any appeals) in the Probate Action and Civil Action.

Also not mentioned in Peter's opening appeal brief or included in his excerpts of the record, Robert filed a timely

dischargeability action against Peter, seeking to except debts arising from the Probate Action from discharge under § 523(a)(2), (4) and (6). Robert contended that as a result of Peter's alleged fraud, conversion and waste, he and/or the Trust was damaged in the amount of $1.5 million, plus those funds Robert expended to avoid foreclosure of the Hill Drive Property and attorney's fees. Robert later amended his complaint, seeking relief only under § 523(a)(4) and (6).

In December 2012, the state court entered judgment for Robert with respect to the Bond Funds and awarded him $192,660.00 jointly and severally against Peter and Richard. Peter and Richard appealed that decision and lost. Notably, the appellate court in its decision stated that the Bond Funds judgment was not void and did not violate the discharge injunction as Peter claimed.

### 1.   Post-discharge events

Peter received a discharge on January 8, 2013, just days before trial in the Probate Action was to begin. The discharge order — Official Form B18 — states that the "debtor is granted a discharge under section 727 of title 11, United States Code . . . ." but warns in all upper case letters, "SEE THE BACK OF THIS ORDER FOR EXCEPTIONS AND OTHER IMPORTANT INFORMATION." The back side of the discharge order provides a list of debts that are **not** discharged in a chapter 7 case, including:  "(h) Debts that the bankruptcy court, under section 523 of the Bankruptcy Code or other applicable law, specifically has decided or will decide in this bankruptcy case are not discharged." Peter's case was closed on January 29, 2013.

Meanwhile, trial proceeded in the Probate Action from

-6-

January 22, 2013, through May 23, 2013.

Peter moved to reopen his bankruptcy case in May 2013 to file a motion alleging claims that Robert had violated the automatic stay and discharge injunction by actions he had taken in the Probate Action, including obtaining the Bond Funds judgment and presenting a total claim for damages at the end of trial against Peter for over $3.5 million. The motion was granted and Peter's case was reopened on May 28, 2013.

Peter's bankruptcy case and Robert's dischargeability action against Peter were reassigned to the Hon. Deborah J. Saltzman on May 12, 2014.

### a. Results of the state court proceedings

After trial and Peter's discharge, the state court issued a variety of minute orders and final decisions in the Probate Action. Ultimately, it approved Robert's Work Plan Claim I for $221,000 and ordered that he be reimbursed for expenses of $572,772, plus attorney's fees and costs. The state court also ruled that the $1.5 million in loan funds belonged to the Trust and that Peter's distributive share would be offset by the $973,520 in unaccounted funds not used for the benefit of the Hill Drive Property. Peter and Richard were also held jointly and severally liable for Robert's attorney's fees and costs.

Peter appealed the probate judgments, which were consolidated for appeal. The California Court of Appeal affirmed, but ordered that the Work Plan Claim I be reduced from $221,000 to $212,500 and that Robert's reimbursement claim be reduced from $572,772 to $360,272 (which Peter refers to as the "Work Plan Claim II"), based on mathematical errors made by the trial court.

Meanwhile, Robert filed the ordered second accounting for the Trust in October 2013, which included a request that $315,298.77 in attorney's fees and costs expended on behalf of the Trust in litigating the Probate Action against Peter and Richard be offset against their distributive shares in the Trust. Robert contended that none of the fees or costs would have been incurred but for Peter and Richard's malfeasance and theft against the Trust. Robert further asserted that he was owed an additional $187,200 based on the Work Plan ("Work Plan Claim III").

### 2.   Peter's motion for contempt

On November 18, 2015, Peter moved for an order to show cause why Robert (and his attorneys) should not be held in contempt for violating the discharge injunction ("Contempt Motion"). In short, Peter argued that the judgments Robert obtained, or attempted to obtain, in the Probate Action were based on prepetition claims that were discharged under § 727(b) on January 8, 2013. Thus, argued Peter, Robert's actions to collect, recover or offset these discharged prepetition debts against Peter or his beneficial interest in the Trust violated § 524(a)(2), and therefore Robert should be sanctioned for contempt under § 105(a).

Specifically, Peter contended Robert had violated the discharge injunction by:

> (1) obtaining a judgment on the fraud claim of $973,520 (the loan funds) on the basis of a prepetition claim under Cal. Probate Code § 850(a)(3)(B) that was discharged;
>
> (2) obtaining a judgment on Work Plan Claim I of $212,500 (which diminished Peter's distributive share in the Trust by $70,833.33) on the basis of a prepetition contract claim that was discharged;
>
> (3) obtaining a judgment on Work Plan Claim II of

-8-

$360,272 (which diminished Peter's distributive share by $120,090.66) on the basis of a prepetition contract claim that was discharged;

(4) attempting to obtain a judgment on Work Plan Claim III of $187,000 (which diminished Peter's distributive share by $62,400) on the basis of a prepetition contract claim that was discharged;

(5) attempting to obtain a judgment for $332,897.74 in attorney's fees and costs (which diminished Peter's distributive share by $166,448.87) in connection with these prepetition claims that were discharged;

(6) attempting to obtain a judgment on state law statutory claims for Trust administration and other Trust related expenses paid for personally by Robert due to Peter's malfeasance totaling $296,298.42 (which diminished Peter's distributive share in the Trust by $148,149.21); and

(7) disputing that the Bond Funds judgment of $192,660 was based on a prepetition claim that was discharged.

Peter further argued that the judgments at issue, which made determinations as to Peter's personal liability, were void because they were based on discharged debts. In addition, with respect to the fraud claim judgment of $973,520, Peter argued that only the bankruptcy court had jurisdiction to adjudicate that claim because it was the kind of debt specified in § 523(a)(2), (4) or (6). For the alleged contempt, Peter sought damages of $1,164,443.99 (the total of the fraud judgment and Work Plan Claims I and II), plus attorney's fees and costs of $146,871.50 he incurred in defending these claims.

Robert did not file an opposition to the Contempt Motion. Without a hearing, the bankruptcy court entered an order denying the Contempt Motion ("Contempt Order"). Peter timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

-9-

# III. ISSUES

1. Did the bankruptcy court provide sufficient findings to support the Contempt Order?

2. Did the bankruptcy court abuse its discretion by not finding Robert in contempt for willfully violating the discharge injunction?

# IV. STANDARD OF REVIEW

The bankruptcy court's decision respecting civil contempt and sanctions is reviewed for abuse of discretion. Rediger Inv. Servs. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.), 503 B.R. 726, 731-32 (9th Cir. BAP 2013); Nash v. Clark Cty. Dist. Attorney's Office (In re Nash), 464 B.R. 874, 878 (9th Cir. 2012). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are clearly erroneous. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

# V. DISCUSSION

**A.  The bankruptcy court erred by not articulating any findings for the Contempt Order, but such error was harmless in this case.**

The bankruptcy court made no findings — legal or factual — in the Contempt Order; it simply stated: "The court has considered the [Contempt Motion] and has determined that there are no grounds for the issuance of an order to show cause. Therefore, IT IS HEREBY ORDERED THAT the [Contempt Motion] is denied." Peter contends the bankruptcy court abused its discretion by failing to provide any factual or legal basis for why it denied the Contempt Motion.

-10-

A motion to determine whether a creditor should be held in contempt for violating the discharge injunction is a contested matter. See Rule 9020 (Contempt Proceedings — which provides that Rule 9014 governs a motion for an order of contempt); Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186, 1189 (9th Cir. 2001). As a contested matter, the bankruptcy court was required to make findings of fact, either orally on the record or in a written decision. See Rule 9014(c) (incorporating Rule 7052, which in turn incorporates Civil Rule 52). The findings must be sufficient to indicate the factual basis for the court's ultimate conclusion. Unt v. Aerospace Corp., 765 F.2d 1440, 1444 (9th Cir. 1985).

"'The findings must be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.'" Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 815 (9th Cir. 2003) (quoting Unt, 765 F.2d at 1444). In the absence of complete findings, we may vacate a judgment and remand to the bankruptcy court to make the required findings. See United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005).

We may conduct appellate review, even when a bankruptcy court does not make formal findings, however, "if a complete understanding of the issues may be obtained from the record as a whole or if there can be no genuine dispute about omitted findings." Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 919-20 (9th Cir. BAP 2011).

In reviewing the docket from the dischargeability action, Robert had filed a motion for partial summary judgment on his

-11-

§ 523(a)(4) and (6) claims on the basis of issue preclusion. In defense of that motion, Peter argued that Robert's post-discharge state court judgments were void and violated the discharge injunction, the same argument he raised in the Contempt Motion.

At a November 19, 2015 hearing on Robert's motion in the adversary (which was the day after Peter had filed his Contempt Motion), the bankruptcy court set forth in detail why it rejected Peter's arguments. In short, it found that Peter's arguments lacked merit and showed a fundamental misunderstanding of bankruptcy law. Hr'g Tr. (Nov. 19, 2015) 5:24-10:14. After discussing the purpose of the discharge injunction under § 524, the bankruptcy court stated the following:

> THE COURT: The key notion of Section 524 is that it refers to a dischargeable debt. A non-dischargeable debt is not subject to the discharge injunction. This is basic Ninth Circuit law. . . .
>
> Now, the language in Section 523 of the Bankruptcy Code is also quite clear as to what the discharge and the discharge injunction by extension applies to. Section 523(a) provides that a discharge under Section 727 of this title does not discharge an individual debtor from any debt and then goes on to enumerate the variety of debts that are not discharged and that, of course, includes [debts] that are not dischargeable under Section 523(a)(4) and 523(a)(6).
>
> Now, in this case there was a timely action under Section 523 to determine the liability -- the dischargeability of the debt owed to the plaintiff for the discharge and the discharge injunction do not apply to those debts. So the argument that an action in state court that was properly brought, that was properly continued after seeking and receiving relief from the automatic stay, that somehow this action violates the discharge injunction again is a basic misunderstanding of bankruptcy law.
>
> Now, this point is made even more clear in the discharge order for the debtor in this case. . . . The order goes on to say in all capitals, "See the back of this order for exception." You turn to the back of the discharge order and we see a heading that says, "Debts that are not discharged." And line (h):

-12-

> "The type of debt that is not discharged includes debts [that] the Bankruptcy Court under Section 523 of the Bankruptcy Code or other applicable law specifically has decided or will decide in this bankruptcy case are not discharged."
>
> There is no question that the debts in this case that are subject to the dischargeability proceeding were not discharged by the 2013 discharge of the debtor. That's why we're here. . . .
>
> Now, I want to also make clear, as I alluded to before, that the probate case is entirely proper as it relates to the bankruptcy case. The plaintiff received relief from the automatic stay to pursue the action and the timing of the discharge before the conclusion of the state law action is irrelevant because there was a pending Section 523 dischargeability action. The discharge did not apply to the debt at issue in the state court proceeding and there could be no violation of the discharge injunction.

Id. at 6:21-24, 7:3-22, 8:3-15, 8:20-9:4. The court then went on to discuss Lakhany v. Khan (In re Lakhany), 538 B.R. 555 (9th Cir. BAP 2015), which it found to be similar to the situation here.

The bankruptcy court also told Robert to not file an opposition to Peter's Contempt Motion because it planned to enter an order denying the motion "for the same reason that I stated on the record at the beginning of my comments today. . . . [S]o I will issue an order without any need for further briefing or comment." Hr'g Tr. (Nov. 19, 2015) 15:4-15, 15:19-20.

Unfortunately, Peter and his counsel did not appear at that hearing. However, we presume they have since reviewed the transcript and are fully aware as to why the bankruptcy court denied the Contempt Motion, even though Peter has made no mention of that hearing or the findings made there in his appeal brief.

It would have been better practice for the bankruptcy court to articulate the findings it announced on the record at the summary judgment hearing in the dischargeability action in its

-13-

Contempt Order (which it apparently intended to do but for reasons unknown did not), as opposed to stating only that no grounds existed to grant the Contempt Motion. Nonetheless, because the transcript from the November 19 hearing provides us with a clear understanding of the basis for why the bankruptcy court denied the Contempt Motion, which was a pure legal basis, we will review the merits of that decision.

**B.    The bankruptcy court did not abuse its discretion by not finding Robert in contempt of the discharge injunction because the debts at issue have not yet been discharged.**

A party who knowingly violates the discharge injunction can be held in contempt under § 105(a). ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1007 (9th Cir. 2006). We begin by noting what is not disputed in this case. First, Robert was granted relief from stay to proceed to judgment, including any appeals, in the Probate Action. Thus, while the bankruptcy court retained control over the final decision regarding nondischargeability, it expressly allowed liquidation of the claims and determination of facts required for nondischargeability to proceed in the Probate Action. Also, the state court judgments at issue are based on Peter's prepetition conduct, which Robert alleged consisted of nondischargeable claims of fraud, conversion and waste. Finally, Robert timely filed a dischargeability action against Peter in accordance with Rule 4007, seeking relief for claims under § 523(a)(2), (4) and (6) in connection with the Probate Action debts (but he later dismissed his (a)(2) claim).

When a bankruptcy petition is filed, § 362 automatically provides the debtor with a temporary stay or injunction against certain actions by creditors against the debtor. Upon the

-14-

granting of a discharge, the temporary injunction of § 362 dissolves and is replaced by the permanent injunction of § 524. See § 362(c)(2)(C). Essentially, this permanent injunction — the discharge injunction — enjoins creditors from attempting to collect from the debtor or the debtor's assets debts that have been discharged in bankruptcy. Section 524(a) states, in pertinent part, that a discharge:

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . ;
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any **such debt** as a personal liability of the debtor, or from property of the debtor, . . . .

(emphasis added). The "such debt" language refers to "any debt discharged under section 727," as stated in § 524(a)(1). In re Lakhany, 538 B.R. at 562; Aldrich v. Imbrogno (In re Aldrich), 34 B. R. 776, 779 n.1 (9th Cir. BAP 1983). Thus, nondischargeable debts are not subject to the discharge injunction. Boeing N. Am., Inc. v. Ybarra (In re Ybarra), 424 F.3d 1018, 1027 n.11 (9th Cir. 2005); Fla. Dep't of Revenue v. Diaz (In re Diaz), 647 F.3d 1073, 1088 (11th Cir. 2011) (discharge injunction prohibits collection only with respect to dischargeable debts and does not apply to nondischargeable debts). Therefore, Robert could not violate the discharge injunction if he was taking action to recover debts that are nondischargeable.

The permanent injunction provided by § 524(a)(2) enjoining creditor actions against debts discharged under § 727 must be read in conjunction with § 727(b), which provides: **Except as provided**

-15-

**in section 523 of this title**, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter[.]" (Emphasis added). Thus, the discharge injunction does not enjoin actions of creditors who successfully invoke § 523, which provides a list of exceptions to discharge. Ackerman v. Eber (In re Eber), 687 F.3d 1123, 1128 (9th Cir. 2012) (citing In re Aldrich, 34 B.R. at 779).

In other words, upon the timely filing of a complaint objecting to dischargeability of a debt under § 523, the discharge injunction does not apply with respect to that debt until the bankruptcy court makes a determination as to the dischargeability of that debt. See In re Eber, 687 F.3d at 1128; In re Aldrich, 34 B.R. at 779-81; Buke, LLC v. Eastberg (In re Eastberg), 440 B.R. 851, 855, 857-58 (Bankr. D.N.M. 2010), aff'd on other grounds, 447 B.R. 624 (10th Cir. BAP 2011) (discharge injunction does not apply to a debt when a timely objection to dischargeability of the debt is made under § 523(a)(2), (4) or (6) unless and until the bankruptcy court determines that the debt is discharged); In re Jenkins, 330 B.R. 625, 629 (Bankr. E.D. Tenn. 2005) (so long as it remains possible that a particular debt could be declared nondischargeable under § 523, the permanent applicability of § 524(a) protections to such debt cannot be determined) (citing In re Schultz, 251 B.R. 823, 830 (Bankr. E.D. Tex. 2000)); In re Hiles, 2002 WL 32709406, at *3 (Bankr. C.D. Ill. Aug. 15, 2002) (until the bankruptcy court determines dischargeability of creditor's state law claims under § 523(a)(2) and (4) in a timely-filed adversary proceeding, it remains an open

-16-

question whether such claims against the debtor are discharged or not).

Section 523 compels this result. Section 523(a) provides, in pertinent part, that "[a] discharge under section 727 . . . does not discharge an individual debtor from any debt," and then goes on to list the 19 exceptions, which includes paragraphs (2), (4) and (6). Section 523(c)(1) provides that, except in certain circumstances not relevant here, "the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a)."

Hence, a debt is not discharged if a timely complaint is filed objecting to discharge of that debt under § 523(a)(2) (fraud), or (4)(fraud or defalcation while acting in fiduciary capacity, larceny, or embezzlement) or (6) (willful and malicious injury) unless and until the bankruptcy court denies the objection. See also In re Eastberg, 440 B.R. at 857 (holding same and citing string of cases). Furthermore, as the bankruptcy court correctly observed, the discharge order in this case specifically contemplates the possibility of a determination by the bankruptcy court, after the date of discharge, that certain debts under § 523 may be nondischargeable. See Gray v. Berry (In re Gray), 2000 WL 34239244, at *5 (W.D. Wis. Apr. 12, 2000) (so holding); Union Nat'l Bank of Marseilles v. Leigh (In re Leigh), 165 B.R. 203, 222 (Bankr. N.D. Ill. 1993) (so holding).

-17-

Peter raises the same arguments here as he did before the bankruptcy court. Each lack merit. As the court correctly noted, Peter has a fundamental misunderstanding of bankruptcy law. Because Robert filed a timely dischargeability action against Peter seeking to except the debts at issue in the Probate Action from Peter's discharge under § 523(a)(4) and (6), and because the bankruptcy court has not yet determined the dischargeability of these debts in the pending adversary proceeding, the debts have not been discharged and the discharge injunction was and is not applicable to them. The fact that Peter's discharge came before the Probate Action went to trial and the judgments were entered is of no moment due to the pending adversary proceeding, and the bankruptcy court's agreement that the Probate Action should proceed and resolve issues necessary for the bankruptcy court's nondischargeability determinations. Therefore, the discharge injunction did not prevent Robert from establishing Peter's liability in the Probate Action. In re Lakhany, 538 B.R. at 562-63. Consequently, Peter's argument that the trial in the Probate Action and related state court judgments are "void" because they were based on discharged debts also fails.

Peter also contends that the state court lacked jurisdiction to decide the fraud claim of $973,520, because it is a "debt of a kind specified in § [523(a)(2), (4) or (6)]" that only the bankruptcy court could consider. While he is correct that the determination of whether a debt is dischargeable under § 523(a)(2), (4) or (6) is exclusively within the bankruptcy court's jurisdiction, Rein v. Providian Fin. Corp., 270 F.3d 895, 904 (9th Cir. 2001), the predicate facts which may form the basis

-18-

for such a determination may be litigated in state court. In re Lakhany, 538 B.R. at 560 (bankruptcy courts often make nondischargeability determinations via issue preclusion on facts determined elsewhere) (citing Grogan v. Garner, 498 U.S. 279, 290 (1991)); see also Allred v. Kennerley (In re Kennerley), 995 F.2d 145, 148 (9th Cir. 1993) ("Had [creditor] filed a timely complaint to determine dischargeability, he could have returned [to the bankruptcy court] after the state court action" and had "the dischargeability of the debt determined."); In re Eastberg, 440 B.R. at 862 (bankruptcy court can modify the automatic stay to permit state court litigation to proceed to judgment for purpose of establishing a debt at issue in a pending nondischargeability action so that issue preclusion may be used to limit what is later raised in the nondischargeability action).

Peter confuses the state court establishing his **liability** on the debt at issue in the Probate Action, with a determination of **whether that debt is dischargeable**. As to the former, the state court was free to determine liability and damages given the stay relief order. As to the latter, nothing in the record suggests the state court has made any determinations as to whether the debt at issue is "nondischargeable."

Necessary to a finding of contempt under § 105(a) is that the offending party willfully violated the discharge injunction. Because no such injunction was applicable to the debts at issue as a matter of law, Robert could not have violated it. Accordingly, the bankruptcy court did not abuse its discretion in denying the Contempt Motion.

////

-19-

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.